GERVACIO RIVERA y OTROS, demandantes y recurrentes, *v.* ESTADO LIBRE ASOCIADO DE PUERTO RICO, demandado y recurrido.

*Número:* RE-87-191 *Resuelto:* 15 de junio de 1988

*Wilfredo Luciano Quiñones*, abogado de los recurrentes; *Rafael Ortiz Carrión, Procurador General*, y *Sylvia Cancio Bigas, Procuradora General Auxiliar*, abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

El presente recurso cuestiona la sentencia dictada por el Tribunal Superior, Sala de Humacao, sobre el fundamento de que incidió el foro primario al aplicar a los hechos de este caso la doctrina de agotamiento de remedios administrativos y desestimar la acción allí pendiente. La controversia nos permite examinar, en sus vertientes sustantiva y procesal, todo el ordenamiento promulgado por la Asamblea Legislativa para vindicar los derechos de los niños con impedimentos.

I

El 19 de diciembre de 1986 el Sr. Gervacio Rivera Rivas y la Sra. Ana María Nieves Jiménez, por sí y en representación de su hijo con impedimentos físicos Gervacio Rivera Nieves, presentaron acción civil sobre daños y perjuicios contra el Estado Libre Asociado de Puerto Rico (E.L.A.) alegando que éste incumplió con su compromiso de proveer educación especial al menor. Solicitaron la indemnización por razón de daños emocionales, angustias mentales y pérdida total de la capacidad productiva del menor.

El E.L.A. compareció al pleito para solicitar la desestimación del mismo toda vez que los demandantes no habían

agotado los remedios administrativos que tenían disponibles en la Oficina del Procurador de Personas con Impedimentos, 3 L.P.R.A. sec. 532 *et seq.*, ni habían cumplido con los términos de notificación que dispone la Ley de Reclamaciones y Demandas contra el Estado, 32 L.P.R.A. sec. 3077a. Específicamente, el Estado señaló que la ley orgánica de dicha agencia confiere al procurador los poderes para investigar y adjudicar las querellas presentadas por las personas con impedimentos por razón de las deficiencias en los servicios educativos que presta el Estado. La parte compareciente se opuso a la desestimación alegando que por tratarse de una acción sobre daños y perjuicios no procedía el trámite administrativo.

El Tribunal Superior acogió la solicitud del E.L.A. y desestimó la acción sin perjuicio de que, una vez agotados por la parte demandante los remedios administrativos ante la Oficina del Procurador de Personas con Impedimentos, de prevalecer, pudiera "acudir nuevamente a reclamar los daños". Ante nos, el señor Rivera afirma que el tribunal de instancia incidió al desestimar la demanda bajo el fundamento de que no se agotaron los remedios administrativos. Sostiene que la legislación puertorriqueña, aprobada para poner al Gobierno de Puerto Rico en condiciones de recibir la asignación federal para estos programas remediales, crea también unos derechos reclamables en los tribunales del país.

Por su parte, el E.L.A. expone que la demanda no alega una violación al debido proceso de ley al limitarse exclusivamente a solicitar en forma general compensación por daños, fruto de la alegada negligencia del Departamento de Instrucción Pública. Aduce que los demandantes no demostraron las gestiones realizadas ante dicha agencia para lograr que se le ofrecieran los servicios.

La controversia ante nos se circunscribe a determinar si fue correcta la aplicación de la doctrina de agotamiento de

remedios administrativos utilizada por el tribunal de instancia. Para fijar con acierto la solución de la controversia, y con el propósito de evaluar el ordenamiento jurídico aplicable a esta controversia, examinemos inicialmente las leyes promulgadas por la Asamblea Legislativa para vindicar los derechos estatutarios de los niños con impedimentos.

## II

■ Recientemente, en *Bonilla v. Chardón*, 118 D.P.R. 599 (1987), estudiamos el alcance de la Ley Federal de Educación para Niños con Impedimentos, Ley Pública Núm. 94–142 (20 U.S.C. sec. 1401 *et seq.*), y de su equivalente en Puerto Rico, la Ley del Programa de Educación Especial, Ley Núm. 21 de 22 de julio de 1977 (18 L.P.R.A. sec. 1331 *et seq.*). Ambos estatutos reconocen el derecho de los niños con impedimentos físicos a tener acceso al sistema de instrucción pública mediante un plan de enseñanza individualizada que atienda las necesidades de cada uno. Estas leyes constituyen parte de un ambicioso esfuerzo de los gobiernos de Estados Unidos y de Puerto Rico para promover la educación de niños con impedimentos. Véase *Hendrick Hudson Dist. Bd. of Ed. v. Rowley*, 458 U.S. 176 (1982).

La Ley del Programa de Educación Especial expresamente define el tipo de educación especial requerida:

"Educación Especial" significará la instrucción especialmente diseñada para llenar las necesidades muy particulares del niño impedido, incluyendo experiencias de enseñanza y aprendizaje dentro del salón de clases, instrucción en educación física, bellas artes, instrucción en el hogar, en hospitales e instituciones públicas o privadas debidamente reconocidas por el Departamento que llenen los requisitos establecidos por este Capítulo sin costo alguno para el padre o encargado. 18 L.P.R.A. sec. 1332(e).

■ Mediante este estatuto la Asamblea Legislativa acordó que correspondía al Estado ofrecer a cada niño impe-

dido acceso al sistema de instrucción pública para que tuviera la oportunidad de desarrollarse y hacer uso al máximo de sus potencialidades. Exposición de Motivos de la Ley Núm. 21, *supra*.

La ley garantiza la participación de los padres de niños impedidos en las decisiones relacionadas con la educación especial ofrecida por el Departamento de Instrucción Pública, 18 L.P.R.A. sec. 1338(a), y establece un procedimiento para objetar cualquier determinación sobre la "ubicación, identificación, evaluación y tratamiento escolar" del menor. 18 L.P.R.A. sec. 1338(b). El ordenamiento impone al Departamento de Instrucción Pública el deber de considerar y evaluar diligentemente la querella presentada mediante investigación dentro de los veinte (20) días siguientes a la fecha de presentación de la objeción. 18 L.P.R.A. sec. 1338(c).

■ En junio de 1978 el Departamento de Instrucción Pública aprobó el Reglamento del Programa de Educación Especial. En el mismo se reafirma "el derecho que tiene el niño impedido al disfrute de una educación adecuada, libre y gratuita, que le permita desarrollarse y hacer uso al máximo de sus potencialidades, a tono con la naturaleza y severidad de su impedimento". Preámbulo del Reglamento del Programa de Educación Especial, 30 de junio de 1978, pág. 1. También se requiere que cada niño que reciba una educación especial tenga "un plan individual de trabajo a base de sus fortalezas y sus necesidades educativas", preparado con la participación de los padres. Íd., Art. IX-Plan Individual, pág. 8.

■ El reglamento también contiene una serie de salvaguardas procesales requeridas por ley. El Reglamento del Programa de Educación Especial, Art. X-Derechos de los Padres, pág. 9, reconoce el derecho de todo padre a examinar el expediente de su hijo en las áreas de identificación, evalua-

ción y ubicación del niño (íd., Art. X-A) y a ser notificado antes de que el departamento cambie el programa del menor. Por último, se dispone que todo padre o encargado tiene derecho a objetar una decisión sobre la evaluación, diagnóstico prescriptivo, ubicación del niño o la educación ofrecida mediante la oportuna presentación de una querella al Departamento de Instrucción Pública. A tenor con este esquema, las querellas deben ser consideradas dentro de veinte (20) días laborables luego de su presentación en la Oficina del Superintendente del distrito escolar. Íd., Art. XI-B.

■ El propio reglamento garantiza al querellante la utilización de un procedimiento que cumpla con el debido proceso de ley, íd., Art. XI-C, incluso una vista ante un panel presidido por una persona que no esté "relacionad[a] con la educación del niño . . .". Íd., Art. XI-D, pág. 10. Se dispone, también, que las partes tendrán derecho en la vista a representación legal así como a someter la prueba pertinente, tanto documental como pericial, y a contrainterrogar los testigos. El comité examinador deberá formular su decisión con determinaciones de hecho dentro de diez (10) días laborables contados a partir de la celebración de la vista, y se podrá solicitar al Secretario de Instrucción Pública una reconsideración de esta decisión.

■ De lo anterior se desprende que el Departamento de Instrucción Pública, al amparo de la Ley del Programa de Educación Especial, ha promulgado un reglamento con un procedimiento que cumple cabalmente con las normas del debido proceso de ley y que requiere que las decisiones sobre las querellas sometidas se tomen rápidamente. También garantiza que los padres tendrán una efectiva participación en el proceso decisional y una oportunidad de que sus objeciones sean oídas por los funcionarios pertinentes.

■ Para ratificar su compromiso con la defensa de los derechos de las personas con impedimentos, la Asamblea Legislativa también promulgó la Ley Núm. 44 de 2 de julio de 1985 (1 L.P.R.A. sec. 501 *et seq.*) que prohíbe el discrimen contra impedidos por parte de cualquier institución pública o privada que reciba fondos del Estado Libre Asociado de Puerto Rico:

> Se prohíbe que cualquier persona natural o jurídica, por sí o a través de otra, impida, obstaculice, limite o excluya a otra persona con impedimentos físicos o mentales y por el mero hecho de tales impedimentos, de participar, formar parte o disfrutar en o de cualesquiera programas o actividades organizadas, patrocinadas, operadas, implementadas, administradas o de cualquier otra forma dirigidas o llevadas a cabo por cualesquiera instituciones públicas o privadas que reciban fondos del Estado Libre Asociado de Puerto Rico. 1 L.P.R.A. sec. 502.

El estatuto proscribe que las instituciones públicas o privadas adopten normas o utilicen métodos administrativos "cuyo propósito o efecto sea discriminar contra las personas con algún tipo de impedimento físico o mental". 1 L.P.R.A. sec. 503.

■ A los fines de poner en vigor esta extensa legislación, se creó la Ley de la Oficina del Procurador de las Personas con Impedimentos, Ley Núm. 2 de 27 de septiembre de 1985 (3 L.P.R.A. sec. 532 *et seq.*). Dicha instrumentalidad posee poderes para "[a]tender, investigar, procesar y adjudicar querellas . . . en aquellos casos en que cualquier agencia pública o entidad privada discrimine contra una persona con impedimentos". 3 L.P.R.A. sec. 532g.

El procurador está facultado con amplios poderes ·cuasiadjudicativos para celebrar vistas y emitir órdenes de cesar y· desistir, así como aquellas "*otras órdenes correctivas*" que procedan en derecho. Art. 9 de la Ley Núm. 44, *supra*, 1 L.P.R.A. sec. 509. Cualquier parte adversamente afectada

por una decisión del procurador puede solicitar la revisión judicial de la misma dentro de los términos establecidos por ley.

█ Mediante este ordenamiento legal compuesto por estas tres (3) leyes, la Asamblea Legislativa prohibió que las instituciones públicas discriminen contra los impedidos, requirió que el Departamento de Instrucción Pública tuviese un programa de educación especial para niños y nombró un Procurador de las Personas con Impedimentos para vindicar sus derechos y tomar acción correctiva. De esta manera se crearon los instrumentos necesarios para eliminar el discrimen contra los impedidos por parte de las instituciones que reciben fondos del Gobierno.

Aclarado el ordenamiento legal vigente, corresponde examinar si los tribunales deben aplicar la norma de agotamiento de remedios administrativos al considerar una acción de daños y perjuicios contra el Departamento de Instrucción Pública por su alegado incumplimiento con la Ley del Programa de Educación Especial.

### III

█ La doctrina de agotamiento de remedios administrativos es una norma de autolimitación judicial de carácter consuetudinario y esencialmente práctica, con gran arraigo en Puerto Rico y en Estados Unidos. Véanse: *Weinberger v. Salfi*, 422 U.S. 749 (1975); *Mathews v. Eldridge*, 424 U.S. 319 (1976); *Bowen v. City of New York*, 476 U.S. 467 (1986). Mediante la misma los tribunales discrecionalmente se abstienen de revisar una actuación de una agencia gubernamental hasta tanto la persona afectada agote todos los remedios administrativos disponibles y, por lo tanto, la decisión refleje la posición final de la entidad estatal. *E.L.A. v. 12,974.78 Metros Cuadrados*, 90 D.P.R. 506 (1964). Como el "objetivo [es] mantener un adecuado balance y distribu-

ción de poder y tareas entre las agencias administrativas y el poder judicial", *Vélez Ramírez v. Romero Barceló*, 112 D.P.R. 716, 722 (1982); *García Cabán v. U.P.R.*, 120 D.P.R. 167 (1987), su aplicabilidad no depende de criterios rígidos, "sino de si a la luz de las circunstancias del caso y pericia particular de la agencia, se entiende que la intervención judicial sería prematura". *Vélez Ramírez v. Romero Barceló*, supra, págs. 722–723.

El profesor Jaffe, en su conocida obra *Judicial Control of Administrative Action*, elocuentemente explicó el origen y la justificación de la doctrina:

> El agotamiento [del remedio] tiene su analogía en el requisito común de la finalidad como condición para que un tribunal superior revise las decisiones de un tribunal inferior. La tradicional regla de finalidad cubre una variedad de situaciones hipotéticas y es un compromiso inicial entre las consideraciones en conflicto, cuyo balance difiere de un caso a otro.
>
> . . . . . . . .
>
> Las consideraciones que contribuyen a la regla de "finalidad" son obviamente pertinentes a la regla del agotamiento; de hecho, son un poco más poderosas en el derecho administrativo que en el derecho de apelaciones. En el derecho administrativo hay una dimensión adicional. Dentro del concepto anglo-americano, las agencias administrativas son entidades con identidad propia; no son parte del sistema judicial. El control judicial viene desde afuera. La agencia está, dentro del Poder Ejecutivo, o bajo el *Humphrey's Executor*, "independiente". El Poder Judicial no intervendrá a la ligera con una labor conferida al Poder Ejecutivo hasta que esté claro que el Poder Ejecutivo ha excedido su mandato. La doctrina del agotamiento del remedio es, por lo tanto, una expresión de la autonomía ejecutiva y administrativa. Esto tiene particular pertinencia cuando, como ocurre con frecuencia, se le ha conferido a la agencia amplia discreción y el ejercicio potencial de esta autoridad es pertinente a la solución de la controversia cuya revisión ha sido prematuramente solicitada. (Traducción nuestra.) L.L. Jaffe, *Judicial Control of Administrative Action*, student ed., Toronto, Ed. Little, Brown and Company,

1965, págs. 224–225. Véanse, también: *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51 (1938); *McKart v. United States*, 395 U.S. 185 (1969).

 Al invocar la doctrina y posponer la etapa en la cual el litigante puede recurrir a los tribunales, se logran varios objetivos. En primer lugar, antes de la intervención judicial la agencia puede desarrollar un historial completo del asunto ante su consideración. También puede utilizar el conocimiento especializado de sus funcionarios para adoptar las medidas correspondientes de conformidad con la política pública formulada por la entidad y aplicar uniformemente sus poderes para poner en vigor las leyes, rectificar oportunamente sus errores o reconsiderar el alcance de sus pronunciamientos. De esta manera se evitan los disloques causados por las intervenciones inoportunas de los tribunales en distintas etapas interlocutorias y el poder judicial conserva autoridad para intervenir en los momentos en que sea necesario con el propósito de evitar un daño irreparable a una persona. Véase K.C. Davis, *Administrative Law Treatise*, 2da ed., San Diego, K.C. Davis Pub. Co., 1983, Vol. 4, Cap. 26, Sec. 26:1, págs. 414–415.

 La doctrina también facilita la revisión judicial y asegura que los tribunales tengan información más precisa sobre los fundamentos de la actuación gubernamental, y poder así tomar una decisión más informada sobre el recurso instado. Como la Asamblea Legislativa expresamente ha delegado en las agencias poderes para resolver en primera instancia los asuntos sometidos, la norma también promueve el designio legislativo así como la distribución adecuada y más eficiente de tareas entre los poderes judiciales y ejecutivos. Por último, esta doctrina libera a los tribunales de asuntos que pueden ser resueltos administrativamente. Véanse: Jaffe, *op. cit.*, págs. 424–458; B. Schwartz, 2 *Administrative Law* Sec. 8.30 (1984); Ch. H. Koch, 2 *Administrative Law and Practice* Sec. 10.24 (1985).

Por otro lado, también hay unos factores que inclinan el péndulo hacia la preterición de los canales administrativos. En el pasado hemos aceptado que "[s]e puede prescindir del requisito de agotar el recurso administrativo en casos en que se muestre que (1) la acción administrativa ha de causar un daño inminente material, sustancial, y no teórico o especulativo, en que el balance de conveniencias entre los daños que pueden ocasionarse y la norma en cuestión justifican una desviación de ésta; (2) el recurso administrativo constituye una gestión inútil, inefectiva y que no ofrece proveer un remedio adecuado". *Vda. de Iturregui v. E.L.A.*, 99 D.P.R. 488, 491 (1970). También se puede omitir el trámite administrativo cuando la agencia claramente no tiene jurisdicción y la posposición conlleva un daño irreparable al afectado, o el asunto es estrictamente de derecho que no requiere unos conocimientos especiales de la agencia administrativa. *Vélez Ramírez v. Romero Barceló*, supra, pág. 722.

Finalmente, si la reclamación del demandante relata "un agravio de patente intensidad al derecho del individuo que reclame urgente reparación", se puede utilizar el *injunction* para eludir el cauce administrativo. *Otero Martínez v. Gobernador*, 106 D.P.R. 552, 556 (1977); *Febres v. Feijóo*, 106 D.P.R. 676 (1978); *Pierson Muller I v. Feijóo*, 106 D.P.R. 838, 850 (1978); *First Fed. Savs. v. Asoc. de Condómines*, 114 D.P.R. 426, 438 (1983). Véase, también, *Bowen v. City of New York*, supra. Corresponde a la parte demandante alegar que se debe prescindir del requisito de agotamiento con hechos específicos y bien definidos, expuestos de una manera que le permita al tribunal evaluar la defensa del Estado.

Sin embargo, la norma se debe aplicar con flexibilidad y no debe constituir una barrera para impedir arbitra-

riamente el acceso a los tribunales. La aplicación de la doctrina generalmente depende de un análisis de estos factores que inclinan la balanza a favor o en contra de la revisión judicial. Davis, *op. cit.*, pág. 415.

■ Aunque de ordinario la aplicación del principio por los tribunales conlleva la desestimación de la acción incoada y su envío al foro administrativo, cuando un litigante también reclame daños y perjuicios que la agencia no puede adjudicar, generalmente "la mejor práctica es suspender la acción judicial para que, una vez advenga final y firme el dictamen administrativo, se resuelva si proceden los daños reclamados". *Delgado Rodríguez v. Nazario de Ferrer*, 121 D.P.R. 347, 359 esc. 7 (1988).

IV

■ Bajo los criterios antes expuestos, de ordinario los planteamientos referentes a si un niño impedido recibió una educación individualizada en respuesta a sus peculiares necesidades es cuestión que debe ser inicialmente resuelta por la agencia. La formulación de un plan individualizado de educación para el niño impedido requiere la participación de los maestros que conocen los problemas del niño y quienes lo han evaluado a través de los años. También exige la intervención de personas con adiestramiento y experiencia previa en esta área educativa tan especializada. Precisamente por las diferencias que se proyectan en cuanto a capacidad, física y mental, conocimiento, destrezas y trasfondo de cada niño, y por la dificultad intrínseca de la evaluación de competencias genéricas, el Congreso de Estados Unidos y la Asamblea Legislativa de Puerto Rico asignaron recursos a los organismos estatales educativos para confeccionar planes individualizados de educación especial. Por esta misma razón se dispuso un extenso ordenamiento procesal para permitirle a los padres participar en el proceso institucional decisorio y se

crearon paneles especiales de educadores para considerar las querellas de los padres.

Para que los tribunales puedan efectivamente adjudicar un reclamo legítimo de un padre de que la agencia no ha diseñado un programa que responda a las necesidades del menor, es conveniente que los educadores tengan una oportunidad de responder a la querella mediante el procedimiento administrativo provisto por la ley. Una vez procesada la querella y formuladas por escrito las determinaciones de rigor, los tribunales están en mejor posición para ejercer su función revisora y adjudicar adecuadamente los eventos del caso. Ello podría incluso conducir a que mediante ese trámite administrativo se resuelva satisfactoriamente el problema y el menor reciba los servicios que necesita para su desarrollo personal que, después de todo, es el interés plasmado en esta legislación inicial.

En estos casos la naturaleza del problema requiere de los conocimientos especializados que tienen los funcionarios del sistema educativo, así como una determinación confiable de las necesidades particulares del menor impedido. En ausencia de un planteamiento de que los remedios son inadecuados, la prudencia judicial aconseja que se remita el caso al Departamento de Instrucción Pública para que allí se ventile la controversia principal. Véanse: *Ezratty v. Com. of Puerto Rico*, 648 F.2d 770 (1er Cir. 1981); *Doyle v. Secretary of Health and Human Services*, 848 F.2d 296 (1er Cir. 1988).

Por otro lado, advertimos que si no se utilizan las salvaguardas procesales apuntadas anteriormente, de ordinario no procede una reclamación de daños al amparo del Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141. Recordamos que en *Bonilla v. Chardón*, supra, reconocimos que la violación arbitraria e injustificada de esas salvaguardas procesales impuestas por ley es fuente de responsabilidad por

los daños causados. Sin embargo, ese pronunciamiento respondió a que allí se probó que los demandantes utilizaron todos los procedimientos administrativos y se demostró que los funcionarios gubernamentales no cumplieron con sus propias determinaciones y compromisos, constituyendo esto una deliberada indiferencia y negligencia crasa en el desempeño de sus deberes en violación al debido proceso requerido por la ley y el Reglamento del Programa de Educación Especial.

■ Al aplicar los principios esbozados al caso de autos notamos que la causa de acción está predicada en que el Departamento de Instrucción Pública incumplió su obligación de proveer educación especial al menor impedido. Aunque no con la precisión deseada, las alegaciones de la demandada exponen sucintamente un reclamo a dicha agencia por no haberle provisto a Gervacio Rivera Nieves una educación especial, y que tal omisión causó un rezago educativo y agravó sus impedimentos. En estas circunstancias peculiares y en vista de los pronunciamientos vertidos en esta opinión, en justicia, antes de aplicar con rigor en este pleito la doctrina de agotamiento de remedios administrativos, procede que se le conceda a los padres la oportunidad de enmendar su demanda para especificar las gestiones realizadas en el foro administrativo y así intentar ubicar la causa de acción en la perspectiva doctrinaria que inspira esta decisión. *Clemente v. Depto. de la Vivienda*, 114 D.P.R. 763, 771 (1983); *A.T.P.R. v. Padín Santiago*, 104 D.P.R. 426, 428–429 (1975); *Moa v. E.L.A.*, 100 D.P.R. 573, 586 (1972). De esta forma el tribunal de instancia tendrá todos los elementos necesarios para determinar si debe remitir la reclamación del Sr. Gervacio Rivera al Departamento de Instrucción Pública para que, conforme con el procedimiento dispuesto por la Ley del Programa de Educación Especial y su reglamento, prontamente

se ventile la querella de estos padres legítimamente preocupados por el bienestar de su hijo.

Si el foro de instancia determina que es aplicable la doctrina de agotamiento de remedios administrativos, procede la paralización de los procedimientos judiciales para que, una vez advenga final y firme la decisión del Departamento de Instrucción Pública, el tribunal pueda resolver los méritos de la reclamación. *Delgado v. Rodríguez*, supra.

*Así revocada la sentencia recurrida, se devuelve el caso al tribunal de instancia para ulteriores procedimientos conforme con esta opinión.*