*543 TEXTO COMPLETO DE LA SENTENCIA
La parte apelante, Marina Puerto del Rey, Inc. (Marina Puerto del Rey), solicita que revoquemos la sentencia dictada por el Tribunal de Primer Instancia, Sala Superior de Fajardo en Humacao, mediante la cual declaró con lugar una moción de sentencia sumaria radicada por la parte apelada concediendo un injunction permanente sobre una controversia que se encuentra ante el trámite administrativo.
Analizado el recurso apelativo, se revoca la sentencia apelada emitida por el Tribunal de Primera Instancia, por falta de jurisdicción al emitirla, en cuanto no se han agotado los remedios administrativos ante las agencias concernidas. Veamos los fundamentos.
I
Marina Puerto del Rey es propietaria del proyecto Marina Puerto del Rey el cual colinda por el sur con el Río Demajagua y por el oeste con la Carretera Estatal Núm. 3.
Según surge del recurso, Marina Puerto del Rey sometió ante la Junta de Planificación la Consulta Núm. 82-24-0769-JPU sobre la ubicación de una marina en la Bahía Demajagua ocupando un área en el mar de 8.97 cuerdas y sus facilidades accesorias. Dicha consulta fue denegada el 3 de febrero de 1983 mediante el Informe Núm. 83-24-JPU-020. (Ap. 23, pág. 213.)
El 23 de marzo 1983, Marina Puerto del Rey solicitó reconsideración a dicho informe y el 19 de mayo de 1983, la Junta de Planificación emitió resolución en la cual sostuvo que el desarrollo de los terrenos para el uso propuesto era viable sujeto a ciertas condiciones. Según la Junta de Planificación, las condiciones habrían de tomarse en consideración al prepararse y someterse por Marina Puerto del Rey el desarrollo preliminar correspondiente a la Administración de Reglamentos y Permisos (ARPE).
Los señalamientos y recomendaciones propuestos incluían la construcción de una vía desde la Carretera Estatal Núm. 3 hasta la playa y una paralela a la zona marítimo-terrestre, diseñando rampas de acceso al mar en coordinación con el Departamento de Recursos Naturales y Ambientales (DRNA) y la Corporación para el Desarrollo y Administración de los Recursos Marinos, Lacustres y Fluviales (CODREMAR). Se proveería un estacionamiento público de veinte (20) espacios y se dedicará a uso público, al igual que las calles, mediante la escritura pública correspondiente. La resolución de la Junta de Planificación indicaba que ARPE podría hacer requerimientos adicionales que fuesen necesarios en el futuro. (Ap. 23, pág. 213.)
El 13 de octubre de 1983, la Junta de Planificado enmendó su aprobación al proyecto a los fines de eliminar el requisito de haber firmado contrato de arrendamiento con el Estado, previo a obtener el permiso de construcción para la marina a ser considerada. (Ap. 24, pág. 217.)
*544 Con fecha del 26 de marzo de 1987, ARPE autorizó el desarrollo preliminar para el proyecto de urbanización residencial turístico-comercial, así como marina en la Bahía Demajagua. Como parte del mismo, y al igual que la Junta de Planificación, impuso ciertas condiciones. (Ap., pág. 221.) El 30 de mayo de 1990, ARPE autorizó el plano de desarrollo preliminar alterno. (Ap. 27, pág. 230.)
El 27 de octubre de 1995, el DRNA aprobó el uso de la zona marítimo-terrestre. (Ap. 28, pág. 240.) Transcurrido varios meses, el 30 de enero de 1996, ARPE expidió el permiso de construcción. Dicho permiso señalaba que no se expediría permiso adicional para el proyecto, hasta tanto se sometieran los siguientes documentos:
Escritura pública dedicando a uso público la calle de acceso de 11.00 metros de ancho de la Carr. Est. Núm. 3 hasta la playa, así como un estacionamiento de 30 espacios para el público. Estas facilidades estarán localizadas hacia la colindancia norte del proyecto, conforme al desarrollo preliminar alterno aprobado el 30 de mayo de 1990.
Escritura pública dedicando a uso público cincuenta (50) espacios de atracadores de botes (bote slips) para uso y disfrute de los pescadores del sector, así como en área pública de 20 espacios de estacionamiento para los pescadores.
Bajo ningún concepto se permitirá el control de acceso y obstáculo alguno que impida el sobre uso y disfrute de los pescadores del sector al area del muelle publico. A esos efectos, se someterá una escritura garantizando a perpetuidad el libre acceso de los pescadores al referido muelle y al área de estacionamiento desde la Carretera Estatal Núm. 3. (Ap. 28, pág. 244.)
El 15 de mayo de 1996, la Asociación de Pescadores de Punta Figueras, Inc. (Asociación) presentó demanda ante el Tribunal de Primera Instancia, sobre injunction (preliminar) permanente, y daños y perjuicios. La Asociación alegó, entre otras cosas, que la parte apelante había incumplido con las condiciones que le había impuesto ARPE para la construcción del proyecto Marina Puerto del Rey. (Ap. 2, pág. 31.) Marina Puerto del Rey contestó la demanda negando la existencia de la servidumbre y aduciendo que en tanto no se ha dado por terminada sus obras, resultaba prematuro determinar si había incumplido con las condiciones. (Ap. 3, pág. 34.) Valga el señalar que la demanda fue enmendada posteriormente en tres ocasiones solicitándose como remedio que se permitiera el acceso por la finca a los apelados y se le ordenara a Marina Puerto del Rey a constituir mediante escritura la servidumbre de paso. (Aps. 4, 7 y 8, págs. 41, 53 y 73.)
Marina Puerto del Rey sometió a ARPE y al Departamento de Agricultura, sucesor de CODREMAR, la Escritura Pública Núm. Siete (7) de 6 de mayo de 1999, otorgada ante el notario público Jorge S. Carlo Marrero para su aprobación. En dicha escritura se expuso que, a tenor con las condiciones impuestas por ARPE, se dedicaba a uso público el Muelle Núm. 65 para uso de pescadores y el estacionamiento para uso de pescadores. (Ap. 16, pág. 171.) Al momento de radicarse este recurso apelativo, ninguna las agencias había emitido determinación respecto a dicho trámite el cual está ante su consideración.
La parte apelada, la Asociación, radicó moción indicando que la escritura otorgada por Marina Puerto del Rey contenía condiciones, limitaciones y controles al libre acceso, contrario a lo ordenado por ARPE. Algunas de las limitaciones señaladas se referían a que el uso se limitaba a aquellos pescadores bonafide del sector que mantengan licencias de pesca comercial vigente con el DRNA. (Ap. 17, pág. 178.)
La Asociación solicitó se dictara sentencia sumaria a su favor alegando que no existía controversia en cuanto a que Marina Puerto del Rey tenía la obligación de ceder para uso público el camino de ocho (8) metros de ancho y que impuso condiciones y restricciones. (Ap. 18, pág. 181.) Marina Puerto del Rey se opuso aduciendo que no se trataba de una cesión, que se cumplió con la condición establecida por ARPE y que existían controversias que debían ser dilucidadas en un procedimiento en los méritos y no por la vía sumaria. *545 (Ap. 19, pág. 183.) El Municipio de Fajardo, por su parte, presentó moción aduciendo que es el DRNA quien debe delimitar la jurisdicción del área donde debe establecerse el acceso público de ocho (8) metros solicitando que se declarara con lugar la moción de desestimación. (Ap. 20, pág. 198.)
Luego de varios trámites ante el foro de instancia, “[l]a controversia , quedó limitada por las partes a determinar el efecto y las obligaciones que surgen de los permisos y resoluciones emitidas por las instrumentalidade del Estado." (Sentencia, Ap. 1, pág. 4.)
Debemos hacer constar que ante la controversia de la partes, la Cámara de Representantes aprobó la R. de la C. 3452, el 16 de junio de 1998, para investigar de todo lo concerniente con las facilidades pesqueras en la Bahía Demajagua. El Informe de la Comisión de Desarrollo de la Región Este y de la Comisión de Recreo y Deportes recomendó, entre otros asuntos, que la Junta de Planificación y ARPE tomaran las acciones administrativas que procedieran para que cumplieran con sus resoluciones otorgando los permisos y sus condiciones.
El 7 de abril de 1998, el Tribunal de Primera Instancia dictó sentencia declarando con lugar la moción de sentencia sumaria radicada por la parte apelada. Sostuvo que la escritura otorgada no era válida, toda vez que contenía condiciones que no fueron contempladas por ARPE, que el acceso del muelle de pescadores sería también para uso del público en general y ordenó a Marina Puerto del Rey otorgar otra escritura sin las referidas condiciones. (Ap. 1, pág 1.) Eventualmente, Marina Puerto del Rey solicitó reconsideración, la cual fue declarada no ha lugar por el tribunal de instancia. (Aps. 21 y 22, págs. 203 y 209.)
Inconforme con dicha determinación, Marina Puerto de Rey acude ante nos alegando, en síntesis, que erró el tribunal de instancia: primero, al dictar sentencia sumaria y conceder el remedio existiendo hechos materiales en controversia; segundo, al entrar a considerar la controversia suscitada, aun cuando parte del trámite administrativo está ante las agencias especializadas con jurisdicción; y tercero, al determinar que era improcedente que se requiriera a los usuarios del muelle que fueren pescadores bonafide con licencia.
II
Procederemos a discutir el segundo error señalado en tomo a la jurisdicción primaria de las agencias administrativas y la doctrina de agotamiento de remedios administrativos para disponer del recurso ante nos.
A
La doctrina de agotamiento de remedios administrativos
La sección 4.2 de la Ley de Procedimiento Administrativo Uniforme (LPAU), Ley Núm. 170 de 12 de agosto de 1988, dispone que una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente, podrá presentar una solicitud de revisión ante el Tribunal de Circuito de Apelaciones. 3 L.P.R.A. see. 2172; Igartúa de la Rosa v. Administración del Derecho al Trabajo, opinión de 2 de diciembre de 1998, 98 J.T.S. 157, pág. 397.
La doctrina de agotamiento de remedios administrativos se ha desarrollado para establecer el foro que corresponde inicialmente adjudicar la controversia y determinar el momento propicio para la intervención judicial. La decisión de una agencia no está madura, sino hasta que se hayan agotado los remedios que se concede ante la agencia, según lo dispone la ley. Bajo ese requerimiento, se pospone la etapa en la cual se puede acudir a los tribunales hasta que el litigante agote todos los remedios disponibles en el foro administrativo. See 4.3, LPAU, 3 L.P.R.A. see. 2173; Igartúa de la Rosa v. Adm. del Derecho al Trabajo, supra, 98 J.T.S 157, pág. 397; Rivera v. E.L.A., 121 D.P.R. 582, 593 (1988).
Se fundamenta la doctrina de agotamiento de remedios administrativos, en la delegación que válidamente le otorga el poder legislativo a las agencias administrativas para resolver ciertos asuntos en primera instancia. Al *546 aplicar el peritaje, la agencia se encuentra en mejor posición para tomar una determinación, la cual luego puede ser revisada judicialmente. Junta Examinadora v. Amneris Elias, opinión de 26 de noviembre de 1997, 97 J.T.S 141, pág. 321; Demetrio Fernández Quiñones, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, Editorial Forum, 1993, págs. 449-450.
La doctrina de jurisdicción primaria, junto a la doctrina de agotamiento de remedios administrativos constituye una norma de abstención judicial que pretende lograr que las reclamaciones sometidas inicialmente a la esfera administrativa lleguen al foro judicial en el momento apropiado. Su objetivo básico es evitar una intervención judicial innecesaria y a destiempo que tienda a interferir con el cauce y desenlace normal del procedimiento administrativo. Igartúa de la Rosa v. Administración del Derecho al Trabajo, supra, pág. 397; Delgado Rodríguez v. Nazario, 121 D.P.R. 347, 354-355 (1988).
Se trata de un requisito jurisdiccional que no debe ser soslayado, a menos que se configure alguna de las limitadas excepciones que bajo nuestro ordenamiento jurídico justifican preterir el trámite administrativo, como lo son: (1) que el remedio que provee la agencia sea inadecuado; (2) que se pudiera producir un. daño irreparable al promovente y en el balance de los intereses no se justifique agotar los remedios administrativos; (3) que se alegue la violación sustancial de derechos constitucionales; o (4) cuando se trata de un caso claro de falta de jurisdicción de la agencia, entre otras. Igartúa de la Rosa v. Administración del Derecho al Trabajo, supra, pág. 397; Guadalupe Pérez v. Saldaña, 133 D.P.R. 42, 50 (1993).
Las doctrinas de jurisdicción primaria y el agotamiento de remedios administrativos tienen como fin común coordinar y armonizar la labor adjudicativa de los foros administrativos y los judiciales. Están dirigidas a promover una relación propia y armónica entre los tribunales y las agencias encargadas de administrar particulares disposiciones regulativas. Delgado Rosario v. Nazario, supra, pág, 353; Febres v. Feijoó, 106 D.P.R. 676, 683 (1978).
En su origen, la doctrina de jurisdicción primaria, de génesis jurisprudencial, fue concebida para guiar a los tribunales a determinar si deben intervenir inicialmente en cierta controversia o si le permiten a la agencia concernida resolverla según las funciones y prerrogativas contenidas en su ley orgánica. First Fed. Savs. v. Asoc. de Condómines, 114 D.P.R. 426, 433 (1983). A su amparo, el foro judicial se abstiene para permitir al organismo enjuiciar una materia de su competencia, bajo el supuesto de que éste posee unas destrezas y conocimientos especializados (expertise). Delgado Rosario v. Nazario, supra, pág. 354.
Bajo ese principio de especialización, se ha reconocido que la Junta de Planificación es un organismo creado por ley para proteger los intereses y el bienestar de la ciudadanía en el descargo de la política pública de planificación y zonificación. Art. 4. Ley de Planificación, 23 L.P.R.A. 62c; Luán Investment Corp. v. Román, 125 D.P.R. 543, 548 (1990).
En este sentido y ante la controversia que nos concierne, se ha concedido amplia discreción a ARPE sobre la formulación y mantenimiento de la política pública a seguir con relación al trámite de la concesión y denegación de permisos de uso y velar por el cumplimiento efectivo de sus determinaciones. A.R.P.E. v. Ozores Pérez, 116 D.P.R. 816, 821 (1986).
B
Principio constitucional de separación de poderes
Nuestro sistema constitucional descansa bajo el principio constitucional de separación de poderes, el cual representa la expresión jurídica de la teoría de gobierno que pretende evitar la concentración indebida del poder en una misma fuente, mediante la distribución tripartita del poder estatal. Misión Industrial v. Junta de Planificación, opinión de 30 de junio de 1998, 98 J.T.S. 79, pág. 1144.
No es suficiente que se conozca el limitado grado de separación involucrado en la separación de los poderes *547 legislativo, ejecutivo y judicial; es imprescindible, además, conocer sus limitaciones frente a cada rama de gobierno. Misión Industrial v. Junta de Planificación, supra, pág. 1145.
La jurisprudencia sobre separación de poderes refleja una preocupación por mantener un equilibrio adecuado entre las ramas que integran nuestro sistema de gobierno. Una rama no debe interferir con otra debilitando su autoridad o independencia, violentando el equilibrio compartido entre éstas. Misión Industrial v. Junta de Planificación, supra, pág. 1145; Vélez Ramírez v. Romero Barceló, 112 D.P.R. 716,722 (1982).
Los tribunales, al hacer cualquier tipo de determinación, debemos considerar la experiencia y los conocimientos especializados que tenga el organismo administrativo sobre los asuntos que le han sido encomendados bajo la ley orgánica de la agencia. Misión Industrial v. Junta de Planificación, supra, pág. 1161.
Cónsono a tales principios, los tribunales, como antes señalamos, deben posponer la etapa en la cual intervienen con el proceso administrativo, hasta tanto éstas completen y adjudiquen las controversias que están ante su consideración. De esta manera se evitan intervenciones inoportunas y a destiempo de los tribunales en las distintas etapas del trámite administrativo, conservando siempre el poder judicial la autoridad para revisar el dictamen final. Gervacio Rivera v. E.L.A., 121 D.P.R. 582, 595-96 (1988) (Casos citados.)
C
El remedio extraordinario de injunction
Nuestro más alto foro ha dispuesto que en la determinación de si procede conceder un injunction, deben considerarse los siguientes criterios: (1) la naturaleza de los daños que pueden ocasionarse a las partes de concederse o denegarse; (2) la irreparabilidad del daño o la existencia de un remedio adecuado en ley; (3) la probabilidad de que la parte promovente prevalezca eventualmente al resolverse el litigio en su fondo; (4) la probabilidad de que la causa se tome académica de no concederse; y (5) el posible impacto sobre el interés público del remedio que se solicita. Misión Industrial v. Junta de Planificación, opinión de 21 de marzo de 1997, 97 J.T.S. 34, pág. 731; P.R. Telephone Co. v. Tribunal Superior, 103 D.P.R. 200, 202 (1975).
La concesión de un injunction preliminar descansa en el ejercicio de la sana discreción judicial, la que se desplegará ponderando las necesidades e intereses de todas las partes envueltas en la controversia. Los tribunales no ejercen su discreción con automatismo judicial, sino que lo hacen luego de realizar un análisis integral de la prueba y un ponderado balance de equidades, sopesando los intereses de las partes. El tribunal no vendrá obligado a emitir el injunction preliminar, si, a su juicio, la balanza se inclina en contra de su expedición. Misión Industrial v. Junta de Planificación, supra, pág. 731.
El remedio de injunction no puede ser utilizado en sustitución del procedimiento de agotamiento de remedios administrativos, excepto si se prueba que el trámite administrativo no provee un remedio rápido, adecuado y eficaz para la corrección de un agravio de patente intensidad que requiere urgente reparación. Otero Martínez v. Gobernador, 106 D.P.R. 552, 556 (1977). (Casos citados.)
El principio de permitir que la agencia administrativa resuelva la controversia, para lo cual tiene la especialidad en la materia, va dirigida a evitar la intervención judicial que puede dilatar el cauce normal de su disposición final. La dilación que pueda acarrear el trámite administrativo no es razón suficiente para la intervención judicial; debe probarse de manera específica un agravio de patente intensidad, un daño irreparable y que agotar el remedio administrativo constituye un ejercicio fútil e inútil. Guadalupe Pérez v. Saldaña Pres. D.P.R., 133 D.P.R. 42, 50 (1993); Colón v. Méndez, Depto. Recursos Naturales, 130 D.P.R. 433, 444 (1992).
Es, precisamente, el balance de equidades a realizarse, el que atiende a la naturaleza de los daños que pueden ocasionarse a las partes de concederse o denegarse el recurso. Una parte se autoinflige daños cuando actuando, con conocimiento, se coloca voluntariamente en una posición que le ocasiona perjuicio irrazonable. Una parte podría no satisfacer el criterio sobre la irreparabilidad del daño, cuando los mismos hayan sido autoinfligidos, *548 porque no los invocó en tiempo o no solicitó los remedios adecuados ante el foro pertinente. Misión Industrial v. Junta de Planificación, supra, págs. 731-732.
III
Aplicación del derecho a la controversia presentada.
Una vez resumida la norma jurídica que rige la controversia presentada, procedemos analizarla a la luz de los hechos particulares ante nuestra atención.
El permiso otorgado por ARPE el 30 de enero de 1996 a Marina Puerto del Rey, fue concedido bajo ciertas condiciones. Entre las mismas se encontraban el que se otorgara una escritura pública mediante la cual se dedicaran a uso público una calle de acceso desde la Carretera Estatal Núm. 3, hasta la playa, así como la concesión de espacios para estacionamiento y atracadores de botes para los apelados.
Al momento de presentarse la demanda ante el tribunal de instancia, ni ARPE ni el Departamento de Agricultura habían emitido determinación alguna sobre la escritura mediante la cual Marina Puerto del Rey pretendía cumplir con las condiciones que le había impuesto ARPE. El permiso estaba sujeto a que se cumpliesen con las condiciones impuestas, las cuales tenían que ser aprobadas por las agencias pertinentes.
La presentación de la demanda solicitando el remedio interdictal ante el tribunal de instancia fue prematura, toda vez que no se habían agotado todos los remedios administrativos. Era ante las agencias administrativas que la parte apelada debía acudir en primera instancia, pues precisamente el propósito de la doctrina de agotamiento de remedios administrativos es que se le brinde la oportunidad a éstas para resolver las controversias ante su consideración, a tono con su especialidad. Sobre este particular, es necesario el destacar que, inclusive, la Cámara de Representantes, mediante el Informe de R. de la C. 3452, le requirió a la Junta de Planificación y a ARPE que dilucidaran cualquier controversia de las parte relacionadas con sus dictámenes.
No ha sido controvertido, pues, que las agencias pertinentes han adjudicado finalmente la controversia ante ellas. Tampoco surge del expediente que las partes hayan acudido ante dichas agencias para reclamar sus derechos con prontitud o que se probara un agravio de patente intensidad o daño irreparable que diera lugar a preterir el cauce administrativo por la dilación en resolver las controversias.
Ante tales circunstancias, no procedía la solicitud de injunction en el foro judicial, toda vez que su concesión está basado en la irreparabilidad del daño y en que no hay ningún otro remedio en ley que pueda proveerse, el cual no es el caso ante nos, pues la parte alegadamente agraviada no ha invocado tales derechos en el foro administrativo.
Por lo tanto, estando pendiente aún la determinación de la agencia administrativa, entre otros aspectos, sobre la escritura de servidumbre de pasos y el cumplimiento de las condiciones impuestas, no procedía la intervención judicial sin antes agotarse los remedios administrativos.
Debemos hacer constar que lo aquí resuelto en nada afecta el permiso de construcción concedido por ARPE el 30 de enero de 1996 y las condiciones especiales impuestas, en particular que no se puede obstaculizar o controlar el acceso de los pescadores en dicha área.
IV
Por los anteriores fundamentos, se revoca la sentencia emitida por el Tribunal de Primara Instancia y se resuelve que por no haberse agotado los remedios administrativos ante las agencias administrativas concernidas, no procedía concederse el remedio solicitado por falta de jurisdicción.
Lo acordó y manda el Tribunal y lo certifica la Subsecretaría General.
*549 Gladys E. Ortega Ramirez
Subsecretaría General