# 2001 DTA 150

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL DE SAN JUAN, PANEL III

JUNTA DE DIRECTORES SUSPENDIDA INTEGRADA POR MANUEL A. COSS MARTINEZ, ET ALS, LIGA DE COOPERATIVAS DE PUERTO RICO
Recurrentes

v.

CORPORACION SEGURO DE ACCIONES Y DEPOSITOS DE COOPERATIVAS DE AHORRO Y CREDITO (PROSAD-COOP), OFICINA DEL COMISIONADO DE INSTITUCIONES FINANCIERAS
Recurridos

Núm. KLRA-00-00502

San Juan, Puerto Rico, a 20 de abril de 2001

Panel integrado por su Presidente, el Juez Arbona Lago, y los Jueces Cordero y Urgell Cuebas

Cordero, Juez Ponente

## TEXTO COMPLETO DE LA RESOLUCION

En el presente recurso se solicita la revisión de la orden emitida y notificada el 14 de junio de 2000 por el

Director Ejecutivo de la Corporación de Seguro de Acciones y Depósitos de Cooperativas de Ahorro y Crédito ("*Prosad*"), en el caso *In re: Cooperativa de Ahorro y Crédito La Merced ("Mercicoop")*. Dicha orden dispuso que la Cooperativa de Ahorro y Crédito La Merced ("*Mercicoop*") fuera colocada en procedimiento de consolidación, compraventa de activos y pasivos o fusión, con el fin de proteger las acciones y depósitos de dicha cooperativa y de no exponer a Prosad y a los socios accionistas y depositantes, a mayores riesgos.

## I

Prosad es una corporación creada al amparo de la Ley 5 de 15 de enero de 1990, según enmendada, 7 L.P.R. A. § 1301 *et. seq.*, conocida como la Ley de la Corporación de Seguro de Acciones y Depósitos de Cooperativas de Ahorro y Crédito ("*Ley Núm. 5*"), cuya responsabilidad es proveer a todas las cooperativas un seguro de acciones y de depósitos y de velar por la solvencia económica de las cooperativas aseguradas. Dicha corporación está compuesta de una Junta, integrada por nueve miembros: el Comisionado de Instituciones Financieras de Puerto Rico, el Administrador de la Administración de Fomento Cooperativo, el Comisionado de Seguros, el Secretario del Departamento de Hacienda, el Presidente del Banco Gubernamental de Fomento, el Director de la Oficina de Presupuesto y Gerencia, dos (2) personas en representación de las cooperativas aseguradas y un (1) ciudadano particular en representación del interés público.

El 5 de mayo de 2000, el Presidente Ejecutivo de Prosad emitió una orden mediante la cual tomó control, posesión y administración de Mercicoop; y citó a la Junta de Directores, Comité de Supervisión, Comité de Crédito y al Comité de Educación de Mercicoop a comparecer a una vista administrativa a llevarse a cabo el 15 de mayo de 2000; ▮ cuyo propósito era determinar la permanencia de la Orden de Sindicatura para que Prosad procediera con la consolidación, compraventa de activos, fusión, u otra alternativa que resultare en beneficio de los socios y depositantes de Mercicoop; a su vez, anunció que Prosad pasaría de inmediato a actuar como síndico administrador de Mercicoop; ordenó publicar en Mercicoop la circunstancias de la vista a celebrarse y colocó un aviso para que toda persona interesada pudiera comparecer a la vista del 15 de mayo de 2000. El 10 de mayo de 2000, el Presidente de la Junta de Directores de Mercicoop presentó una moción en la cual solicitó copia de todo documento que fuera a ser utilizado como prueba por Prosad en la vista a celebrarse. Además, solicitó que los directivos de Mercicoop fueran restituidos a sus puestos para coadministrar dicha cooperativa junto con Prosad. El 12 de mayo de 2000, Prosad presentó una moción informando a la Junta de Directores de Mercicoop la prueba que utilizaría en la vista administrativa. El 15 de mayo de 2000, el Oficial Examinador ordenó a los miembros de la Junta de Directores de Mercicoop producir la prueba documental que fueran a presentar en la vista que había sido postergada para el 22 de mayo de 2000. La Junta de Directores de Mercicoop presentó una moción solicitando el 18 de mayo de 2000 que en la nueva fecha se celebrara una vista sobre el estado de los procedimientos, y que Prosad produjera ciertos documentos. Dicha moción se declaró No Ha Lugar el 19 de mayo de 2000. Sin embargo, la vista del 22 de mayo de 2000 se convirtió finalmente en una sobre el estado de los procedimientos, quedando la vista administrativa reseñalada para el 6 de junio de 2000.

El 24 de mayo de 2000, Mercicoop solicitó producción de documentos ▮ a Prosad, quien se opuso por entender que los documentos requeridos carecen de relevancia y pertinencia. El 26 de mayo de 2000, el Oficial Examinador declaró Con Lugar la oposición presentada por Prosad de no producir copia del Acta de la reunión de la Junta de Directores donde decide poner bajo administración provisional a Mercicoop y copia de la Resolución autorizando al Presidente de la Junta de Directores de Prosad a tomar tal decisión. El Oficial Examinador denegó la solicitud de los miembros de la Junta de Directores de Mercicoop de que se les produjera el acta y resolución de la Junta de Directores de Prosad, ya que dichos documentos no guardaban pertinencia alguna con respecto a las razones contempladas en la Ley Núm. 5, *supra*, para que Prosad colocara a Mercicoop bajo sindicatura provisional. Según éste, las razones para la sindicatura provisional tenían que ver exclusivamente con la situación financiera de la cooperativa y los documentos solicitados por Mercicoop no guardaban relación con eso. De esta determinación, la Junta de Directores de Mercicoop solicitó reconsideración el 31 de mayo de 2000. Posteriormente, Mercicoop solicitó fotocopia de documentos u oportunidad de fotocopiar los mismos y reconsideración del dictamen del Oficial Examinador.

Por otro lado, el 31 de mayo de 2000, la Liga de las Cooperativas de Puerto Rico ("*Liga de Cooperativas*")

solicitó intervenir formalmente en el pleito, a tenor con la Ley Núm. 50 de 4 de agosto de 1999, Ley General de Sociedades Cooperativas, 5 L.P.R.A. § 4001 *et seq*. Posteriormente, el 2 de junio de 2000, el Oficial Examinador, mediante Resolución, ordenó a Prosad producir a los miembros de la Junta de Directores de Mercicoop los estados financieros de dicha cooperativa. Este denegó, a su vez, la solicitud en torno a los informes "*CAMEL*" y los informes especiales de investigación y declaró No ha Lugar la Moción de Reconsideración del 31 de mayo de 2000. El 5 de junio de 2000, el Oficial Examinador acogió preliminarmente la solicitud de intervención de la Liga de Cooperativas condicionando la misma a que ésta presentara una resolución y/o certificación conforme al reglamento de dicha entidad, autorizándole a participar en su nombre en los procedimientos de instancia. Prosad alega que la Liga de Cooperativas nunca cumplió con dicha determinación.

Finalmente, el 6 de junio de 2000 comparecieron ante el Oficial Examinador; Prosad, la Junta de Directores, la Liga de Cooperativas, socios y otros. Luego de argumentarse ciertos asuntos interlocutorios concernientes al descubrimiento de prueba, se suspendieron los procedimientos hasta el 8 de junio de 2000. El día antes del señalado, la Liga de Cooperativas reiteró su solicitud de descubrimiento de prueba a lo que Prosad se opuso.

El 8 de junio de 2000, el Oficial Examinador declaró No Ha Lugar la solicitud de la Liga de Cooperativas al señalar que se atrasarían irrazonablemente los procedimientos. Manifestó que:

*"...La Liga de Cooperativas estuvo presente y representada por el Lcdo. Gregorio Vázquez en la conferencia habida el 22 de mayo, en la cual este último expresó estar considerando la intervención (Transcripción, p. 30). En esa misma conferencia se calendarizaron los procedimientos, incluyendo el comienzo de la vista administrativa 15 días después, el 6 de junio de 2000. La Liga de Cooperativas fue por tanto notificada conforme a Departamento de Recreación v. Asociación Recreativa, 1999 PR Sup. LEXIS 151 (1999).*

*Se rechaza cualquier interpretación de la sección 2159, supra, que pueda llevar a la automática paralización de los procedimientos por al menos 15 días cada vez que una persona interesada radica una solicitud de intervención, pues ello daría al traste con el procesamiento rápido, justo y económico que persigue la Ley 5 del 1988. La Liga de Cooperativas fue debidamente notificada de la vista con 15 días de antelación; es irrelevante si el sombrero que llevaba puesto era de persona interesada o de interventor."* (Enfasis suplido.) ■

Comparecieron, el 8 de junio de 2000, la Junta suspendida y la Líga de Cooperativas y otros. Inconformes con la decisión de éste de no postergar más la vista en sus méritos alegando un estado de indefensión, ciertos miembros de la Junta suspendida, así como la Liga de Cooperativas, se excusaron y abandonaron la sala de vistas.

Luego de tener ante sí la prueba presentada por Prosad, el Oficial Examinador determinó que el juicio de ésta a intervenir provisionalmente con Mercicoop estuvo cabalmente fundado en la crítica situación financiera de dicha cooperativa y recomendó que la Orden de administración provisional emitida el 5 de mayo de 2000 se hiciera permanente. Añadió, además, que Prosad estaba autorizada a proceder con la fusión, consolidación, o compraventa de activos y pasivos de una cooperativa asegurada que está en peligro de insolvencia cuando coincidan las siguientes circunstancias: (1) exista una emergencia; (2) no haya otra alternativa razonable; (3) se determine que dicha acción beneficia al interés público; y (4) dicha acción es la de menor costo para Prosad. Según el Oficial Examinador, las mencionadas circunstancias están presentes, por lo que Prosad podía proceder con la fusión, consolidación, o compraventa de activos y pasivos de Mercicoop, u otras opciones que estime convenientes.

El 14 de junio de 2000, Prosad emitió una orden en la que decretó que la administración provisional de Mercicoop se convirtiera en permanente y que dicha cooperativa fuera colocada en un proceso de consolidación, compraventa de activos y pasivos o fusión, con el fin de proteger las acciones y depósitos en dicha cooperativa. Inconforme con la determinación de Prosad, la Junta de Directores suspendida y la Liga de Cooperativas presentaron un recurso de Revisión ante este Tribunal el 14 de julio de 2000. En el mismo alegaron la comisión de los siguientes errores por el foro administrativo: 1) erró Prosad al no notificar el procedimiento instado contra Mercicoop al Comité de Supervisión, organismo encargado de la administración, dirección y buen

funcionamiento de ésta y, a su vez, parte directamente afectada por la decisión emitida; 2) erró el Oficial Examinador al determinar que la minuta solicitada era evidencia impertinente, en violación a la Ley de Procedimiento Uniforme; 3) erró el Oficial Examinador al denegar la solicitud de la Junta para que se le proveyera copia de los informes CAMEL, basado en que su entrega viola el artículo 10.07 de la Ley de Sociedades Cooperativas; y 4) erró el Oficial Examinador al no conceder a la Liga de Cooperativas un término de quince (15) días para descubrir prueba a partir del momento de permitir la intervención. Por su parte, Prosad presentó su oposición el 31 de julio de 2000.

Finalmente, el 1ro. de agosto de 2000, la Junta de Directores presentó una *"Moción en Auxilio de Jurisdicción y en Oposición a Prórroga"* ■ en la que alegó que Prosad vendió Mercicoop a la Cooperativa de Ahorro y Crédito de Arecibo (*"Copaca"*). El 3 de agosto de 2000, Prosad, a su vez, presentó una *"Moción de Desestimación a Recurso de Revisión"* en la que alegó que el recurso de Revisión presentado no quedó perfeccionado, por lo que este Tribunal carece de jurisdicción. Específicamente, Prosad alegó que Mercicoop no incluyó en el apéndice de su solicitud de Revisión copia de una *"Solicitud de Determinaciones de Hechos y Conclusiones de Derecho Adicionales"* del 22 de junio de 2000, esto en violación de la Regla 59 (E) (a) (e) (f) del Reglamento de Tribunal de Circuito de Apelaciones, 4 L.P.R.A. Ap. XX-A, R 59.

## II

Declaramos la moción de desestimación presentada por Prosad, Sin Lugar, a pesar que la Regla 59 (E) de este Tribunal exige que ciertos documentos formen parte del apéndice del recurso de revisión. Debemos indicar que recientemente el Tribunal Supremo expresó:

*"No cabe duda de que la Regla 59 (E) del Reglamento del Tribunal de Circuito de Apelaciones establece que debe incluirse, como parte del apéndice del recurso de revisión, una copia de toda resolución u orden y toda moción o escrito de cualesquiera de las partes que forme parte del expediente original administrativo, en las cuales se discuta expresamente cualquier asunto planteado en la solicitud de revisión, o que sean relevantes a ésta; y de cualquier otro documento que forme parte del expediente original ante la agencia que pueda serle útil a dicho foro apelativo para resolver la controversia que tiene ante sí.*

*Sin embargo, como hemos señalado antes, no todo incumplimiento con los requisitos procesales o reglamentarios justifica la desestimación del recurso. Arriaga v. F.S.E., opinión del 18 de marzo de 1998, 145 D. P.R. __, 98 J.T.S. 28. Ello es así porque el principio rector de que las controversias judiciales, en lo posible, se atiendan en los méritos, Echevarría Jiménez v. Sucn. Pérez Meri, 123 D.P.R. 664, 673 (1989); Garriga Gordils v. Maldonado Colón, 109 D.P.R. 817, 822-823 (1980); Arce v. Club Gallístico de San Juan, 105 D.P.R. 305 (1976); Acevedo v. Compañía Telefónica de P.R., 102 D.P.R. 787, 791 (1974); Ramírez de Arellano v. Srio. de Hacienda, 85 D.P.R. 823, 829 (1962), es aplicable en el derecho apelativo en relación con la desestimación de recursos por incumplimiento de requisitos reglamentarios para su perfección. Droguería Central, Inc. v. Diamond Pharmaceuticals Ser., Inc., res. del 19 de enero de 2000, 150 D.P.R. __, 2000 J.T.S. 19. En efecto, la flexibilidad en la interpretación de las normas procesales cobra especial relevancia cuando se trata de una determinación de jurisdicción, pues son éstas las que abren o cierran las puertas de entrada a los tribunales apelativos. En ocasiones, en nuestro afán de hacer valer las reglas, las aplicamos literalmente y perdemos de vista que las normas procesales no tienen vida propia. Estas sólo existen para hacer viable la determinación de los derechos sustantivos de las partes y la resolución de forma pacífica de las controversias." Dávila v. Hosp. San Miguel, Inc.,* 117 D.P.R. 807, 816 (1986); *M & R Developers v. Banco Gubernamental,* __ D.P.R. __ (12 de marzo de 2001), **2001 J.T.S. 37.**

En el presente caso, la *"Solicitud de Determinaciones de Hechos y Conclusiones de Derecho Adicionales"*, presentada el 22 de junio de 2000, no priva de jurisdicción a este Tribunal y tampoco es relevante a la controversia planteada.

## III

El primer error señalado por la Junta de Directores y la Liga de Cooperativas está relacionado a que

alegadamente no se notificó al Comité de Supervisión de Mercicoop. No le asiste la razón.

Surge de la Orden de Prosad del 5 de mayo de 2000 lo siguiente:

*"2. La citación a la Junta de Directores, Comité de Supervisión, Comité de Crédito, y Comité de Educación de la Cooperativa La Merced comparecer a una vista administrativa a celebrarse el 15 de mayo de 2000 a las 10:00 a.m. en el piso 14 del Edificio Nacional Plaza en la Avenida Ponce de León 431, Hato Rey, Puerto Rico. En dicha vista se discutirá si:*

*a. la orden de administración se convierte en permanente.*

*b. PROSAD-COOP procede con la consolidación, compraventa de activos, fusión u otra alternativa que resulte en el mejor beneficio de los socios y depositantes y de la Corporación."*

Como vemos, dicha orden citó directamente al Comité de Supervisión de Mercicoop. Además, debemos recordar que como principio fundamental en el derecho administrativo está la doctrina de agotamiento de remedios que es una norma de autolimitación judicial de carácter consuetudinario y esencialmente práctico. Los tribunales discrecionalmente se abstienen de revisar una actuación de una agencia gubernamental hasta tanto la persona afectada agota todos los remedios administrativos disponibles, de forma tal que la decisión administrativa refleje la posición final de la entidad estatal. *Rivera v. E.L.A.*, 121 D.P.R. 582, 593 (1988). Como parte de esta doctrina, las cuestiones no planteadas ante la agencia administrativa ne pueden ser consideradas al adjudicarse un recurso de revisión judicial. *Misión Injustrial v. Junta de Planificación,* __ D.P.R. __ (30 jun. 1998), **98 J.T.S. 79,** a la pág. 1166.

Del expediente del caso ante nos, no surge que los peticionarios hayan alegado, en alguna etapa del trámite administrativo, la no notificación al Comité de Supervisión y simplemente sostienen la misma a base de meras alegaciones.

## IV

El segundo y tercer error señalado se relaciona al requerimiento para que Prosad emitiera el acta y resolución de la Junta de Directores de dicha corporación donde se permitió poner bajo administración provisional a Mercicoop y a los informes CAMEL utilizados por Prosad para determinar la situación de las cooperativas. El cuarto error señalado indica que no se le concedió a la Liga de Cooperativas quince (15) días antes de la vista para descubrir prueba a partir del momento en que se le permite la intervención. No le asiste la razón.

La Ley Núm. 5 crea una Junta de Directores para Prosad y establece que entre sus funciones se encuentra la de adoptar medidas preventivas o remediativas que reduzcan el potencial de pérdidas de las cooperativas aseguradas. Arts. 3. 4 y 6(g) de la Ley Núm. 5, 7 L.P.R.A. § 1302, 1303 y 1305(g).

El Reglamento 5231, aprobado el 8 de mayo de 1995 conocido como Reglamento para Establecer, Administrar y Operar la Corporación de Seguro de Acciones y Depósitos de Cooperativas de Ahorro y Crédito (Prosad), dispone, en el Cap. III, Art. 2 que:

*"Como parte de su responsabilidad de administrar el seguro de acciones y depósitos, la Corporación tiene el deber de velar por la solvencia económica de todas las cooperativas aseguradas."*

Para ello, el Art. 3 del Cap. III del Reglamento 523 establece que:

*"La Corporación tiene el deber de establecer y mantener un sistema de análisis financiero que utilice, entre otras cosas, indicadores estadísticos o financieros que alerten a la Corporación sobre problemas que puedan culminar en la insolvencia de las cooperativas."*

Por su parte, el Art. 1 Cap. IV del Reglamento dispone que:

*"La Corporación adopta el Sistema de Evaluación CAMEL, el cual utiliza indicadores financieros para alertar a la corporación sobre problemas que pueden culminar en la insolvencia de las cooperativas. Este sistema se utilizará para clasificar las cooperativas, según los parámetros del mismo."*

*Prosad evalúa cinco elementos críticos: Capital, Activos, Administración, Economía y Liquidez."* ■

El Art. 19 de la Ley Núm. 5 faculta a Prosad a emitir una orden provisional para colocar una corporación bajo su administración y, a su vez, ordena la liquidación, fusión, consolidación o venta de activos y pasivos cuando coincidan las siguientes circunstancias:

*"(1) Exista una emergencia que requiera una acción rápida con respecto a la cooperativa aseguradora.*

*(2) No haya otra alternativa razonable que pueda asegurar la solvencia de la cooperativa aseguradora.*

*(3) Se determina que la fusión, consolidación o compra de la cooperativa de que se trate, es lo que mejor beneficia al interés público.*

*(4) La fusión consolidación o compra es la alternativa de menor costo para la Corporación. 7 L.P.R.A. § 1318."*

En casos donde se emitió una orden para que Prosad tomará posesión y control inmediato de la cooperativa, deberá celebrarse una vista administrativa dentro de los diez (10) días siguientes a la fecha de notificación de la orden provisional para determinar si la misma se hace permanente o se revoca. *Id.*

Incluso, el Reglamento 5231 establece en el Cap. V, Art. 2:

*"Si no es posible resolver la situación de insolvencia potencial o inmediata de una cooperativa asegurada por medio de los mecanismos de fusión, consolidación o venta de activos y pasivos, la Corporación podrá ordenar la liquidación o adoptar alguna otra alternativa viable que le permita reducir sus pérdidas. No obstante, la Corporación podrá optar por la liquidación de una cooperativa asegurada en primera opción."*

Podemos observar que, como bien determinó el Oficial Examinador, el acta y resolución de la Junta de Directores de Prosad para permitir la administración provisional son impertinentes para determinar si dicha orden debe convertirse en permanente. La facultad de Prosad para emitir una orden provisional y colocar a la corporación bajo su administración emana de la propia Ley Núm. 5, 7 L.P.R.A. § 1318. Por otra parte, los informes CAMEL, a pesar de que no se permitió que se fotocopiaran, surge de la *"Moción Informativa y en Solicitud que se Provea Fotocopia de Documento y/o Oportunidad de Fotocopiar los Mismos"* fechada el 31 de mayo de 2000 que la Junta de Directores de Mercicoop tuvo la oportunidad de examinar los mismos durante toda una jornada laboral. No se permitió fotocopiar la información contenida en el informe CAMEL para evitar la posibilidad de que dicho informe fuera circulado al público en general y que con ello ocurriera el retiro masivo de los fondos en Mercicoop. No obstante, el informe estuvo en disposición para ser estudiado, pero no fotocopiado por la Junta de Directores de Mercicoop.

Por otra parte, la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. § 2101 *et. seq.* (*"LPAU"*), establece en cuanto a la notificación de la vista lo siguiente:

*"La agencia notificará por escrito a todas las partes o a sus representantes autorizados e interventores la fecha, hora y lugar en que se celebrará la vista adjudicativa. La notificación se deberá efectuar por correo o personalmente con no menos de quince (15) días de anticipación a la fecha de la vista, excepto que por causa debidamente justificada, consignada en la notificación, sea necesario acortar dicho período, y deberá contener la*

*siguiente información:*

*(a) Fecha, hora y lugar en que se celebrará la vista, así como su naturaleza y propósito.*

*(b) Advertencia de que las partes podrán comparecer asistidas de abogados, pero no estarán obligadas a estar así representadas, incluyendo los casos de corporaciones y sociedades.*

*(c) Cita de la disposición legal o reglamentaria que autoriza la celebración de la vista.*

*(d) Referencia a las disposiciones legales o reglamentarias presuntamente infringidas, si se imputa una infracción a las mismas, y a los hechos constitutivos de tal infracción.*

*(e) Apercibimiento de las medidas que la agencia podrá tomar si una parte no comparece a la vista.*

*(f) Advertencia de que la vista no podrá ser suspendida." 3 L.P.R.A. § 2159."*

La Liga de Cooperativas tuvo suficiente tiempo para prepararse para la vista, ya que del expediente del caso surge que la misma estuvo representada en la conferencia del 22 de mayo de 2000 por el Lcdo. Gregorio Vázquez, fecha en la que indicó que solicitaría formalmente la intervención y se pautó que la vista administrativa sería el 6 de junio de 2000. Debemos, a su vez, recordar que la vista administrativa fue postergada en varias ocasiones dilatando el trámite y la obligación de Prosad de proteger el mejor interés de los socios ante el eminente riesgo de insolvencia de la cooperativa Mercicoop.

Es importante recordar que constituye norma reiterada, que cuando se impugna un dictamen de una agencia administrativa, los tribunales deben concederle el mayor respeto y deferencia a menos que se infrinjan directamente valores constitucionales fundamentales o cuando las actuaciones de estos organismos sean claramente arbitrarias e ilegales o en una forma tan irrazonable que su actuación constituye un abuso de discreción. *RBR Construction, S.E. v. Autoridad de Carreteras y Transportación de P.R. y su Junta de Subastas*, __ D.P.R. __ (22 dic. 1999), **2000 J.T.S. 7**, a la pág. 468; *Misión Industrial v. Junta de Planificación*, __ D.P.R. __ (21 marzo 1997), **97 J.T.S. 34**, a la pág. 729; *Henríquez v. Consejo de Educación Superior*, 120 D.P.R. 194, 212 (1987).

Concluimos que la actuación de la agencia recurrida fue conforme a derecho, no hubo violación al debido proceso de ley y se hizo tomando en cuenta los mejores intereses de todas las partes.

En ausencia de prueba de que el dictamen administrativo fue arbitrario, ilegal o irrazonable, nos abstendremos de intervenir con el mismo.

## V

Por los fundamentos que anteceden, se deniega expedir el auto solicitado.

Lo acuerda y manda el Tribunal y lo certifica le Subsecretaria General.

Gladys E. Ortega Ramírez
Subsecretaria General

### ESCOLIOS 2001 DTA 150

**1.** La fecha señalada para la celebración de la vista fue postergada en varias ocasiones. Finalmente, la misma se celebró el 8 de junio de 2000.

**2.** Los documentos, los cuales fueron solicitados, fueron los siguientes:

*"(1) carta e informe de examen de clasificación "CAMEL", (2) estados financieros de Mercicoop de 1997-98, (3) informes especiales del CPA González Torres; (4) copia del acta de la reunión de Prosad en donde se decide poner bajo administración provisional a Mercicoop, y (5) copia de la resolución autorizando al Presidente de la Junta de Directores de Prosad a tomar la decisión de poner bajo administración judicial a Mercicoop."*

**3.** La sección 2159 de la Ley Núm. 170 de 1988, aclara el Oficial Examinador, requiere la notificación a las partes e interventores con no menos de quince (15) días de anticipación a la vista adjudicativa.

**4.** Esta fue declarada Sin Lugar por este Tribunal mediante Resolución de 9 de agosto de 2000.

**5.** Las clasificaciones de los indicadores van del 1 al 5, donde 1 ex excelente y 5 es crítico. Mercicoop reflejaba una situación crítica para Prosad con Capital en clasificación 5, el valor de las acciones disminuido en un 102.11% en 1996 a 79.33% en 1999, y en cuanto a los Activos, la clasificación recibida fue de 4, tasa de morosidad en los mismos de 5 y Economía de 5.