Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| LYDIA RAMOS SÁNCHEZ<br><br>Recurrente<br><br>v.<br><br>BANCO POPULAR DE PUERTO RICO H/N/C POPULAR MORTGAGE; HAROLD HOMMY ROSARIO MEDINA, VICE PRES CONSTRUCCIÓN; LUIS R. MORALES SOLANO, ARROW DEVELOPERS CORP.; LUIS R. RIVERA MEDINA, LRRM REAL ESTATE; MARÍA DEL C. DE QUESADA, MARÍA MIYARES REALTY; MC P&G INC. H/N/C TERRANOVA REALTY GROUP, PRES. JOSEPH McCLOSKEY; MOLINAS DOORS & WINDOWS CORP.; YASMIN AGOSTO, EJECUTIVA CUERNTAS BPPR<br><br>Recurridos | KLRA202400644 | *Revisión* procedente del Departamento de Asuntos del Consumidor<br><br><br>Querella Núm.: SAN-2019-0005925<br><br><br>Sobre:<br>Bienes Raíces (Ley Núm. 10 de 26 de abril de 1994, según enmendada) |

Panel integrado por su presidente, el Juez Bermúdez Torres, la Jueza Martínez Cordero y el Juez Cruz Hiraldo.

*Martínez Cordero, jueza ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 9 de enero de 2025.

Comparece Lydia Ramos Sánchez (en adelante, recurrente y/o señora Ramos Sánchez) mediante un *Recurso de Revision Judicial,* para solicitarnos la revisión de la *Resolución Parcial,* emitida el 4 de septiembre de 2024, archivada en autos al día siguiente, y notificada el 9 de septiembre de 2024, por el Departamento de Asuntos del

Número Identificador

SEN2025_____

Consumidor (en adelante, DACo).[1] Mediante la *Resolución Parcial* recurrida, la aludida agencia desestimó la *Querella* presentada por la parte aquí recurrente en cuanto a lo que concernía al Banco Popular de Puerto Rico (en adelante, BPPR), así como en lo referente a Yasmín Agosto (en adelante, señora Agosto) y Harold Hommy Rosado Medina (en adelante, señor Rosado Medina), en su carácter de oficiales de Banco Popular. Sobre dicha *Resolución Parcial* se presentó una moción de reconsideración, la cual fue declarada *No Ha Lugar*, el 21 de octubre de 2024.[2]

Por los fundamentos que expondremos se *desestima* el recurso por falta de jurisdicción.

I

Surge de los autos ante nuestra consideración que, el 22 de noviembre de 2019, la recurrente presentó ante el DACo una *Querella* sobre anuncio y práctica engañosa, incumplimiento de garantía, reparación defectuosa y defectos de construcción en contra de Luis R. Morales Solano, h/n/c Arrow Developers and Constructors Corp.; Joseph P. McCloskey Vázquez, h/n/c Mc P&G Inc., d/b/a Terranova Realty Group; Luis R. Rivera Medina, h/c/n LRRM Real Estate; el señor Rosario Medina, Vicepresidente de Construcción de BPPR; María del Carmen de Quesada, h/n/c María Miyares Realty, y la señora Yasmin Agosto, Ejecutiva de Cuentas de BPPR (en conjunto y en adelante, recurridos).[3] En la *Querella* la recurrente alegó que, el 19 de noviembre de 2015, firmó un Contrato Uniforme de Opción para adquirir una vivienda en la Urbanización Bosque Santa María en Trujillo Alto, Puerto Rico, el cual fue actualizado, el 9 de mayo de 2018. Indicó que, luego de firmar el referido contrato, no fue hasta el 12 de febrero de 2019, que la

---

[1] Apéndice del recurso, a las págs. 199-206. Cabe resaltar que, el 7 de octubre de 2024, el DACo notificó nuevamente la *Resolución Parcial* que nos ocupa por correo electrónico, ya que no había sido notificada a todas las partes.
[2] Apéndice del recurso, a las págs. 226-227.
[3] *Íd.*, a las págs., 1-7.

citaron para la primera inspección. Mediante esta inspección, la recurrente, presuntamente, identificó una serie de desperfectos en la vivienda. Sin embargo, el 24 de abril de 2019, firmó el contrato de compraventa y, el 18 de julio de 2019, se llevó a cabo el cierre de la adquisición de la vivienda. Según adujo, durante el proceso de cierre, informó sobre los desperfectos que había identificado en la inspección y acentuó que los mismos no se habían reparado, a lo cual le respondieron que tendría treinta (30) días para realizar el reclamo. Detalló la recurrente que, posterior al cierre, continuaron los problemas con la propiedad, por lo que, el 23 de julio de 2019, inició unos procesos orientados a reclamar las garantía. Expresó que, a pesar de múltiples gestiones y reclamos, a la fecha de la presentación de la *Querella,* ninguno de los recurridos había accionado para resolver los defectos que adolecía su vivienda. Al amparo de lo expuesto, solicitó al DACo que ordenara a los recurridos a: (i) reparar los defectos reclamados, (ii) cumplir con las garantías solicitadas, o, en la alternativa, que le rembolsaran los costos que incurriera en corregir los desperfectos, y (iii) que le brindara la información de las garantías que aún no se le había proporcionado.

Tras varias incidencias procesales innecesarias de pormenorizar, el 6 de febrero de 2020, el señor Rosario Medina y la señora Agosto, en su carácter de oficiales de BPPR, instaron una *Moción solicitando desestimación sumaria de la querella.*[4] En la misma, sostuvieron que las alegaciones de *Querella* se centraban en exponer que la residencia adquirida por la recurrente adolecía de vicios y defectos que no habían sido remendados. Sin embargo, de las alegaciones no surgía de que el BPPR intervino en la propiedad como diseñador, constructor, urbanizador o promotor. Igualmente,

---

[4] Apéndice del recurso, a las págs. 25-36.

indicaron que, de los documentos anejados a la *Querella*, se desprendía que la relación de la referida institución financiera con el caso se circunscribía a que esta otorgó un préstamo al desarrollador de la urbanización en la cual estaba ubicada la propiedad en cuestión. Por otra parte, detallaron que el Tribunal Supremo de Puerto Rico ha razonado que no se le puede imputar responsabilidad a una institución financiera por vicios de construcción si no ha participado de la venta o construcción del inmueble, y si no ha transgredido sus facultades ordinarias. Además, subrayaron que el Código Civil de Puerto Rico de 2020 (Código Civil de 2020)[5] dispone que quienes son responsables por los vicios de construcción son el dueño, el arquitecto y el contratista del proyecto. Por último, acentuaron que nuestro Alto Foro, igualmente, ha expresado que la responsabilidad del vendedor no puede extenderse a aquellos que no participaron en la compraventa. En virtud de los expuesto, peticionaron al DACo que declara con lugar la solicitud de desestimación en cuanto a lo que les concierne. Lo anterior, puesto a que, en la *Querella*, no se expusieron hechos que justificaran concederle un remedio a la recurrente.

Así las cosas, el 6 de marzo de 2020, se enmendó la *Querella* para añadir a el BPPR como parte querellada.[6] En reacción, 13 de marzo de 2020, el BPPR presentó una *Moción solicitando desestimación sumaria de la Querella.*[7] En el escrito, planteó que en la antedicha enmienda no se incluyeron alegaciones en su contra. A su vez, reiteró los argumentos previamente expuestos por el señor Rosario Medina y la señora Agosto a favor de la desestimación de la *Querella*.

---

[5] Ley Núm. 55-2020, 31 LPRA sec. 5311 *et seq.*
[6] Apéndice del recurso, a las págs. 38-43.
[7] *Íd.,* a las págs. 44-55.

Subsiguiente, el 15 de julio de 2020, el BPPR presentó una moción reiterando su solicitud de desestimación y en petición de que se diera por sometido el referido pliego sin oposición, puesto a que, a la fecha, la recurrente no había presentado escrito en oposición.[8] En la misma fecha, el señor Rosario Medina y la señora Agosto comparecieron con igual solicitud.[9]

Así, pues, el 15 de septiembre de 2020, la parte recurrente presentó una respuesta a las mociones previamente radicadas.[10] En su respuesta, alegó que el BPPR fue partícipe de la promoción, construcción, venta y la toma de decisiones del proyecto de urbanización que nos atañe. A su vez, acentuó que la aludida institución financiera compareció en la escritura de compraventa, a pesar de que el cierre se celebró por medio de otro banco. Igualmente, arguyó que su *Querella* era especifica y que establecía claramente los remedios solicitados. En virtud de lo expresado, le peticionó al DACo que no procediera con la desestimación sumaria de la *Querella*.

En reacción, entre los años 2020 a 2022, las partes presentaron sendos escritos, en los cuales reiteraron sus posturas. Luego, el 1 de septiembre de 2022, la parte recurrente presentó una solicitud dirigida al DACo, en la cual le suplicó, entre otras cosas, que se estableciera una fecha para celebrar la vista administrativa del caso.[11]

Conforme surge de los autos, no fue hasta el 9 de julio de 2024, que la agencia celebró una conferencia con antelación a la vista del caso.[12] En la misma, el BPPR reiteró que en la *Querella* no se esgrimieron alegaciones en su contra.[13] En consecuencia, la parte

---

[8] Apéndice del recurso, a las págs. 56-61.
[9] *Íd.*, a las págs. 62-67.
[10] *Íd.*, a las págs. 69-71.
[11] *Íd.,* a la pág. 102.
[12] *Íd.,* a la pág. 103.
[13] *Íd.*

recurrente peticionó que se le concediera un plazo para exponer su posición en cuanto a lo alegado por la institución bancaria. A esos efectos, la Juez Administrativa le otorgó un plazo de veinte (20) días para que se expresara.[14] A tenor, el 29 de julio de 2024, la recurrente presentó *Moción en cumplimiento de orden.*[15] En el escrito, adujo, principalmente, que el rol del BPPR en el proyecto de la urbanización en cuestión no se limitó a proveerle el financiamiento al urbanizador, si no que este tomó el control del proyecto, dirigió el mercadeo de la venta de las viviendas y supervisó el desarrollo de la obra. Así, pues, arguyó, que la antedicha institución financiera era responsable por los vicios que adolecía su vivienda. Igualmente, sostuvo que el ordenamiento jurídico vigente permite imponer responsabilidad redhibitoria a una institución financiera cuando sus funciones van más allá de proveer el financiamiento del proyecto. Al amparo de lo expuesto, insistió su postura de que el DACo debía declarar sin lugar la moción de desestimación.

En respuesta, 19 de agosto de 2024, el BPPR presentó su quinta moción en solicitud de que se diera por sometida su solicitud de desestimación.[16] En el pliego, además de reiterar los argumentos previamente expuestos, arguyó que el escrito presentado por la recurrente lo que pretendía era enmendar las alegaciones de su *Querella.* Esgrimió que tal pretensión no podía permitirse, puesto a que habían transcurrido cuatro (4) años de haberse iniciado el presente pleito y había concluido el descubrimiento de prueba. Por otra parte, subrayó que el ordenamiento jurídico vigente no avala que una parte enmiende sus alegaciones mediante una oposición a una moción dispositiva.

---

[14] Apéndice del recurso, a la pág. 104.
[15] *Íd.,* a las págs. 103-118.
[16] *Íd.,* a las págs. 186-196.

Evaluadas las posturas de las partes, el 4 de septiembre de 2024, el DACo emitió la *Resolución Parcial* que nos ocupa, la cual fue archivada en autos al día siguiente, y notificada a las partes el 9 de septiembre del 2024.[17] Mediante el referido dictamen, la agencia declaró *Ha Lugar* la moción de desestimación presentada por el BPPR. Ello, luego de concluir que, aun dando por ciertas las alegaciones esbozadas, no se desprendía que alguna iba en contra de la antedicha institución financiera. Por otra parte, el DACo subrayó que las acciones tomadas por la institución bancaria de contratar un vendedor de bienes raíces, establecer un plan de mercadeo, construir un portón de entrada y obtener las pólizas correspondientes, se realizaron con el fin de asegurar el cumplimiento del préstamo provisto al desarrollador y no representaron que esta tuvo una participación activa en el desarrollo del proyecto. Además, la agencia acentuó que, la comparecencia del BPPR en la escritura de compraventa, tampoco implicó que este tuviera un rol activo en el proyecto, ya a que "[l]a comparecencia de la institución que financió el proyecto de construcción es una práctica habitual y necesaria cuando se requiere llevar a cabo una segregación y liberación de una nueva finca".[18] Así, pues, el DACo determinó que procedía desestimar la *Querella* en contra del BPPR, así como en contra de la señora Agosto y el señor Rosado Medina.

---

[17] *Íd.*, págs. 199-206. Huelga resaltar que mediante *Moción* la parte recurrente le informó a la agencia que la resolución parcial no había sido notificada a todas las partes. Ello, puesto a que la carta remitida al desarrollador del proyecto con la notificación del dictamen recurrido fue devuelta. Véase, Apéndice del recurso, a las págs. 208 A-208 E. A tenor, el 7 de octubre de 2024, la agencia envió un correo electrónico, mediante el cual reenvió la *Resolución Parcial* a todas las partes. En el mismo expresó "se da por notificada [la resolución] a todas las partes como parte del correo electrónico enviado el 1 de octubre de 2024. Es a partir del 1 de octubre de 2024 que comenzaran a decursar los debidos términos". Véase, Apéndice del recurso, a la pág. 209. Ahora bien, entendemos que la fecha anteriormente señalada es errónea, dado a que el correo electrónico enviado a las partes tiene fecha del 7 de octubre de 2024, y la *Moción* mediante la cual se le solicitó a la agencia a renotificar el dictamen, fue presentada el 4 de octubre de 2024. Por lo que no es posible que el correo electrónico, en atención a la moción presentada por la recurrente, haya sido enviado el 1 de octubre de 2024. A tenor, colegimos que los términos comenzaron a decursar el 7 de octubre de 2024.

[18] Apéndice del recurso, a la pág. 203.

En desacuerdo, el 18 de octubre de 2024, la recurrente presentó una *Moción de Reconsideración*,[19] la cual fue declarada *No Ha Lugar* el 21 del mismo mes y año.[20]

Aun inconforme con el curso decisorio, el 20 de noviembre de 2024, la recurrente presentó ante esta Curia una *Solicitud de revisión judicial* en la cual esgrimió la comisión del siguiente error:

> Erró el Honorable Secretario del DACO al desestimar arbitrariamente la Querella presentada contra el Banco Popular de Puerto Rico sin celebrar vista o recibir prueba.

Examinado el recurso, le concedimos a la parte recurrente hasta el 27 de noviembre de 2024, para acreditar haber notificado copia del presente recurso a las partes y a la agencia recurrida, según lo dispuesto en la Regla 58 del Reglamento del Tribunal de Apelaciones.[21] Igual término le concedimos al DACo para presentar copia certificada del expediente administrativo núm. SAN-2019-0005925. De otra parte, le otorgamos a la parte recurrida hasta el 20 de diciembre de 2024, para presentar su alegato en oposición al recurso.

En cumplimiento con lo ordenado, el 21 de noviembre de 2024, compareció la parte recurrente para acreditar que el recurso fue notificado a todas las partes. Por otro lado, el 20 de diciembre de 2024, compareció la parte recurrida para presentar *su Alegato en oposición.* En el escrito, solicitó que confirmáramos la *Resolución Parcial* recurrida. Finalmente, luego de que le concedimos un término adicional, el 27 de diciembre de 2024, el DACo presentó el expediente administrativo.

Con el beneficio de la comparecencia de ambas partes, procederemos a exponer el derecho aplicable.

---

[19] *Íd.,* a las págs. 210-223.
[20] *Íd.,* a las págs. 226-227.
[21] 4 LPRA Ap. XXII-B, R. 58.

## II

**A. Falta de jurisdicción**

La jurisdicción es el poder o la autoridad que posee un tribunal para resolver las controversias presentadas ante su consideración.[22] Los tribunales adquieren jurisdicción por virtud de ley, por lo que no pueden arrogársela, ni las partes pueden otorgársela.[23] Es norma reiterada en nuestro ordenamiento, que "los tribunales deben ser celosos guardianes de su jurisdicción y que no tienen discreción para asumir jurisdicción allí donde no la tienen".[24] Igualmente, nuestro Tribunal Supremo ha sido constante en expresar que las cuestiones relativas a la jurisdicción constituyen materia privilegiada.[25] De manera que, deben ser resueltas con preferencia, pues, incide directamente sobre el poder que tiene un tribunal para adjudicar las controversias.[26] Por tal motivo, cuando un tribunal carece de jurisdicción, debe declararlo y desestimar la reclamación sin entrar en sus méritos.[27] De lo contrario, cualquier dictamen en los méritos será nulo y no podrá ejecutarse.[28] Es decir, una sentencia, dictada sin jurisdicción por un tribunal, es una sentencia nula en derecho y, por tanto, inexistente.[29]

Cónsono con lo anterior, la Regla 83 del Reglamento del Tribunal de Apelaciones,[30] confiere facultad a este Tribunal para a iniciativa propia, o a petición de parte, desestimar un recurso o denegar un auto discrecional cuando este foro carece de jurisdicción.

---

[22] *R&B Power, Inc. v. Junta de Subasta ASG,* 2024 TSPR 24, 213 DPR ___ (2024); *AAA v. UIA,* 199 DPR 638, 651-652 (2018).
[23] *Ríos Martínez, Com. Alt. PNP v. CLE,* 196 DPR 289, 296 (2016).
[24] *Peerless Oil v. Hnos. Torres Pérez,* 186 DPR 239, 250 (2012); *S.L.G. Szendrey-Ramos v. F. Castillo,* 169 DPR 873, 882 (2007); *Ríos Martínez.*
[25] *R&B Power, Inc. v. Junta de Subasta ASG,* supra.
[26] *Torres Alvarado v. Madera Atiles,* 202 DPR 495, 500 (2019); *Fuentes Bonilla v. ELA et al.,* 200 DPR 364, 372 (2018).
[27] 4 LPRA Ap. XXII-B, R. 83; *R&B Power, Inc. v. Junta de Subasta ASG,* supra.
[28] *Bco. Santander v. Correa García,* 196 DPR 452, 470 (2016); *Maldonado v. Junta Planificación,* 171 DPR 46, 55 (2007).
[29] *Montañez v. Policía de P.R.,* 150 DPR 917, 921-922 (2000).
[30] 4 LPRA Ap. XXII-B, R. 83 (C).

**B. Limitación de la revisión judicial a órdenes y resoluciones finales**

El Tribunal Supremo de Puerto Rico ha sostenido que el derecho a cuestionar la determinación de una agencia mediante revisión judicial es parte del debido proceso de ley protegido por la Constitución de Puerto Rico.[31] Para cumplir con ese principio, el Artículo 4.006 (c) de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico otorga competencia apelativa al Tribunal de Apelaciones para revisar decisiones, órdenes y resoluciones de las agencias administrativas.[32] Ahora bien, la aludida competencia está limitada a órdenes y resoluciones finales.[33] Esta limitación se consagra, además, en la Sección 4.2 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAUG). La referida sección dispone que:

> [u]na parte adversamente afectada por **una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente** podrá presentar una solicitud de revisión judicial ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia [...].[34]

El Tribunal Supremo de Puerto Rico ha definido las órdenes y resoluciones finales como aquellas que: (i) culminan el procedimiento administrativo; (ii) tienen efectos sustanciales sobre las partes, y (iii) resuelven todas las controversias ante la agencia. Es decir, son decisiones que ponen fin a las controversias, sin dejar nada pendiente para ser decidido en el futuro.[35] A esos efectos, una orden o resolución interlocutoria de una agencia no es revisable directamente, únicamente podrá ser objeto de un señalamiento de

---

[31] *Asoc. Condómines v. Meadows Dev.*, 190 DPR 843, 847 (2014); *Picorelli López v. Depto. de Hacienda,* 179 DPR 720, 736 (2010).
[32] Ley Núm. 201-2003, 4 LPRA sec. 24y(c).
[33] *Íd.* Véase, además, Regla 56 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXI-B, R. 56.
[34] Ley Núm. 38-2017, 3 LPRA sec. 9672.
[35] *Comisionado Seguros v. Universal*, 167 DPR 21, 29 (2006).

error en el recurso de revisión que se presente sobre la determinación final de la agencia.[36] Ahora bien, la Sección 4.3 de la LPAUG dispone que el Tribunal puede relevar a una persona de agotar los remedios administrativos cuando:

> dicho remedio sea inadecuado, o cuando el requerir su agotamiento resultare en un daño irreparable al promovente y en el balance de intereses no se justifica agotar dichos remedios, o cuando se alegue la violación sustancial de derechos constitucionales, o cuando sea inútil agotar los remedios administrativos por la dilación excesiva en los procedimientos, o cuando sea un caso claro de falta de jurisdicción de la agencia, o cuando sea un asunto estrictamente de derecho y es innecesaria la pericia administrativa.[37]

Así, pues, los tribunales se reservan la facultad de intervenir en momentos en que sea necesario para evitar un daño irreparable.[38] No obstante lo anterior, quien recurre al foro judicial, alegando que debe prescindirse del requisito de agotamiento de remedios administrativos, debe señalar hechos específicos y bien definidos que así lo justifiquen.[39]

### III

De entrada, puntualizamos que, como Tribunal revisor, nos corresponde auscultar nuestra propia jurisdicción como paso previo a entender en los méritos de un recurso apelativo. Ello, puesto a que las cuestiones relacionadas a la jurisdicción deben ser resueltas con preferencia, puesto a que inciden directamente sobre el poder que tiene un tribunal para adjudicar las controversias.[40] Por consiguiente, cuando este Tribunal carece de jurisdicción, lo apropiado es que desestimemos la reclamación, sin entrar en sus méritos.[41] A tenor, y luego de haber examinado los autos ante

---

[36] *Íd.*, a la pág. 29.
[37] Ley Núm. 38-2017, *supra*, 3 LPRA sec. 9673.
[38] *Guadalupe v. Saldaña, Pres. U.P.R.*, 133 DPR 42, 49-50 (1993).
[39] *Íd.,* a la pág. 50*; Rivera v. ELA,* 121 DPR 582, 596 (1988).
[40] *Torres Alvarado v. Madera Atiles,* supra, a la pág. 500; *Fuentes Bonilla v. ELA et al.*, supra, a la pág. 372.
[41] 4 LPRA Ap. XXII-B, R. 83; *R&B Power, Inc. v. Junta de Subasta ASG,* supra.

nuestra consideración, disponemos que en este caso no tenemos jurisdicción. Ello, dado a que la *Resolución* objeto de revisión es una parcial, y no final, por lo que no es susceptible de ser revisada. Además, la *Resolución Parcial* no cumple con las excepciones permitidas por el ordenamiento jurídico vigente, las cuales nos facultan de prescindir de acatarnos a la doctrina de agotamiento de remedios administrativos. Nos explicamos.

En el presente caso, la parte recurrente nos solicita la revisión de una *Resolución Parcial* en la cual únicamente se resolvió desestimar la *Querella* presentada por la parte aquí recurrente en lo referente al BPPR, la señora Agosto y el señor Rosado Medina. Por consiguiente, es claro que el DACo, al emitir la resolución recurrida, no dispuso sobre la totalidad del pleito. Conforme esgrimimos en nuestra previa exposición doctrinal, la competencia de este Tribunal para revisar decisiones, órdenes y resoluciones de las agencias se limita a dictámenes finales. Entiéndase que, la *Resolución* emitida por la agencia concernida, debe: (i) culminar el procedimiento administrativo; (ii) tener efectos sustanciales sobre las partes, y (iii) resolver todas las controversias ante la agencia, sin dejar nada pendiente para ser decidido en el futuro.[42] No obstante, lo anterior, una resolución parcial puede ser revisada por un tribunal apelativo cuando: (i) el remedio concedido por la agencia sea inadecuado; (ii) el requerir agotar los remedios administrativos no se justifica puesto a que ocasionaría un agravio al promovente; (iii) se alegue una violación sustancial de derechos constitucionales; (iv) el agotar los remedios administrativos ocasione una dilación excesiva; (v) la agencia concernida no ostente jurisdicción, o (vi) no sea necesaria el peritaje de la agencia por ser una cuestión estrictamente de derecho.[43] Ahora bien, luego de revisar minuciosamente el

---

[42] *Comisionado Seguros v. Universal*, supra, a la pág. 29.
[43] Ley Núm. 38-2017, *supra*, 3 LPRA sec. 9673.

expediente ante nuestra consideración, colegimos que ninguna de la excepciones antes esbozadas se encuentra presente en este caso.

Establecido lo anterior, es un hecho indubitado que la *Resolución Parcial* ante nuestra consideración no es susceptible de revisión y no dispuso de la totalidad del pleito. En vista de ello, no tenemos otra alternativa que desestimar el recurso del título. Sin embargo, lo anterior, en nada limita a que, una vez el DACo emita una *Resolución* que disponga de la totalidad del pleito, la parte que así lo estime, pueda solicitar los remedios que provee nuestro ordenamiento jurídico.

IV

Por los fundamentos que anteceden, se *desestima* el recurso por falta de jurisdicción.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones