Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| WALDEMAR MATOS ROSA<br><br>*Apelante*<br><br><br>v.<br><br><br>DEPARTAMENTO DE LA VIVIENDA Y OTROS<br><br>*Apelado* | KLAN202500456 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de<br><br>Caso Núm.: LO2024CV00159 (Civil 408)<br><br>Sobre: Sentencia Declaratoria |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 14 de julio de 2025.

Comparece ante nos, el señor Waldemar Matos Rosa (señor Matos o apelante) mediante recurso de *Apelación*, en el cual solicitó la revisión de la *Sentencia*[1] emitida y notificada el 13 de marzo de 2025, por el Tribunal de Primera Instancia, Sala Superior de Carolina (TPI o foro apelado). Mediante esta, el TPI declaró *Ha Lugar* dos mociones de *Desestimación*[2] presentadas por el Departamento de Vivienda (Vivienda) y los señores José Boria y Angélica Paz (matrimonio Boria-Paz).

Por los fundamentos que expondremos a continuación, ***confirmamos*** la *Sentencia* impugnada.

## I.

El 9 de septiembre de 2024, el señor Matos instó una *Demanda*[3] en contra de Vivienda y el matrimonio Boria-Paz, sobre sentencia declaratoria. En esta, solicitó que se le proclamara como el titular de la parcela 273, al amparo de la Ley de Viviendas

---

[1] Apéndice del recurso de *Apelación*, págs. 1-14.
[2] Apéndice del recurso de *Apelación*, págs. 64-78; apéndice del recurso de *Apelación*, págs. 93-117.
[3] Apéndice del recurso de *Apelación*, págs. 36-63.

*Enclavadas en Terrenos Ajenos,* Ley Núm. 132 de 1 de julio de 1975, (Ley Núm. 132)[4]. Dicha parcela ubica en la comunidad Medianía Baja en Loíza, en una finca cuyo dueño del terreno es Vivienda. La parcela fue adquirida originalmente en 1952, por la señora Felicita Correa Carrasquillo (señora Correa), abuela del apelante, donde vivió de manera pública, pacífica e ininterrumpidamente hasta su fallecimiento en 2003. Posteriormente, el señor Matos adquirió las mejoras mediante una compra realizada a Vivienda. Consecuentemente, el señor Matos alegó que se subrogó en la prescripción adquisitiva consumada por su abuela. A pesar de haber realizado algunas gestiones extrajudiciales, indicó que Vivienda no le entregó un documento fehaciente que evidenciara la transacción de la titularidad de la parcela o que estableciera el derecho al usufructo. Igualmente, arguyó que Vivienda segregó la parcela 273 en contravención a la ley, porque no le notificó sobre este procedimiento y le otorgó el usufructo de la parcela 273-A al matrimonio Boria-Paz.

Sobre estos últimos, el señor Matos alegó que el matrimonio Boria-Paz comenzó una construcción de obra en la parcela 273-A sin la documentación requerida. Por ende, el señor Matos solicitó que se emitiera una orden permanente en contra del matrimonio para detener la construcción de la obra sin los permisos correspondientes. Por último, suplicó que se determinara que el contrato de usufructo a favor del matrimonio Boria-Paz es nulo y se declarara a este como titular de la parcela 273, o en la alternativa, que se declarara usufructuario de la parcela y dueño de las mejoras realizadas.

El 25 de noviembre de 2024, el matrimonio Boria-Paz presentó su *Contestación a Demanda, Reconvención y Solicitud de*

---

[4] 17 LPRA sec. 751 *et. seq.*

*Desestimación*[5], en la cual alegaron que poseían un contrato de usufructo con Vivienda sobre la parcela 273-A, la cual era separada y distinta a la parcela que ocupaba el señor Matos. En su reconvención, señalaron que a pesar de que se alegó que la señora Correa adquirió la titularidad de la parcela 273 mediante prescripción adquisitiva, no se presentó una sentencia de un tribunal con competencia que haya declarado la titularidad de la parcela, ya sea por usucapión, venta o usufructo. En cuanto a la prescripción adquisitiva, indicaron que el señor Matos no ha vivido en la propiedad de manera ininterrumpida desde que falleció la señora Correa, por lo que no se configura la figura de usucapión. Además, arguyeron que las normas de Vivienda establecían que el usufructo es intransferible y cualquier incumplimiento con sus disposiciones es suficiente para cancelar este contrato. Por último, manifestaron que el señor Matos carecía de legitimación activa porque no poseía un título válido que le permitiera realizar esta reclamación, por lo que correspondía desestimar la *Demanda*.

Además, el mismo día, el matrimonio Boria-Paz presentó una *Moción de Desestimación contra Parte Codemandada José Boria y Angélica Paz*[6] en la que reiteraron su solicitud por falta de legitimación activa del señor Matos para presentar la *Demanda*. Establecieron que no existía ningún tipo de relación contractual o comercial entre el señor Matos y estos. Además, plantearon que todas las reclamaciones realizadas en la *Demanda* eran en contra de Vivienda, ya que este era el dueño de ambas parcelas.

Por su parte, el 9 de diciembre de 2024, el señor Matos presentó una *Réplica a Reconvención y Solicitud de Sanciones por Temeridad*[7], en la que estableció que la *Reconvención* no refleja

---

[5] Apéndice del recurso de *Apelación*, págs. 64-78.
[6] Apéndice del recurso de *Apelación*, págs. 79-87.
[7] Apéndice del recurso de *Apelación*, págs. 88-92.

hechos constitutivos que ameriten la concesión de un remedio. Asimismo, afirmó que Vivienda era el dueño de ambos terrenos, no obstante, en el plano surgió que el solar 273-A se creó del solar 273, por lo que la segregación se realizó sin los procedimientos correspondientes. Por último, solicitó al foro apelado que le impusiera sanciones por temeridad al matrimonio Boria-Paz, ya que las alegaciones presentadas en el caso de autos eran incongruentes a las declaraciones bajo juramento presentadas en el caso CAL1402024-3490.

Por otro lado, el 18 de diciembre de 2024, el Gobierno de Puerto Rico por sí y en representación de Vivienda, presentó una *Moción en Solicitud de Desestimación*[8], al amparo de la Regla 10.2 (5) de Procedimiento Civil[9]. En esta, alegaron que la señora Correa era usufructuaria de la referida parcela, conforme a la Ley de Tierras de Puerto Rico, Ley Núm. 26 de 12 de abril de 1941 (Ley Núm. 26)[10]. Señaló que el tiempo en posesión de la señora Correa era irrelevante, pues el usufructo se extinguía con la muerte del usufructuario y esto no creaba ningún tipo de derecho sucesorio. De igual manera, indicó que el señor Matos presentó una solicitud de adjudicación de título de la parcela 273 ante la agencia. No obstante, adujo que el apelante acudió prematuramente ante este foro, al obviar el proceso administrativo establecido en el Artículo 7(5) del Reglamento para la Distribución y Administración de Parcelas o Solares para Vivienda bajo el Título V de la Ley de Tierras de Puerto Rico (Enmendado), Reglamento 7534 del 30 de junio de 2008 (Reglamento 7534)[11]. La norma dispone que, de no estar de acuerdo con la determinación de

---

[8] Apéndice del recurso de *Apelación*, págs. 93-117.
[9] 32 LPRA Ap. V, R. 10.2(5).
[10] 28 LPRA 241.
[11] Reglamento para la Distribución y Administración de Parcelas o Solares para Vivienda bajo el Título V de la Ley de Tierras de Puerto Rico (Enmendado), Reglamento 7534 del 30 de junio de 2008; Obtenible en: https://www.vivienda.pr.gov/wp-content/uploads/2015/09/7534-Reglamento-para-la-Distribuci%C2%A0n-y-Administraci%C2%A0n-de-Parcelas-o-Solares-para-Vivienda-Bajo-el-T%C2%B0tulo-V-de-la-Ley-de-Tierras-de-Puerto-Rico..pdf.

la agencia, la parte tiene un término para apelar ante el Secretario y solicitar una vista administrativa. Finalmente, Vivienda alegó que el dinero pagado en concepto de las mejoras ya se devolvió a los herederos de la señora Correa.

Así las cosas, el 19 de diciembre de 2024, el señor Matos presentó su *Oposición a Moción de Desestimación*[12] con relación al matrimonio Boria-Paz. Estableció que la solicitud de estos era improcedente, ya que eran parte indispensable en el pleito, toda vez que, la determinación del caso de autos afectaba su contrato de usufructo. Además, expresó que en su *Demanda* existían alegaciones en contra del matrimonio Boria-Paz sobre la ilegalidad de la obra en desarrollo. En cuanto a la falta de legitimación activa, indicó que presentó los recibos de pagos en los que adquirió las mejoras de la parcela 273.

Igualmente, el 20 de enero de 2025, el señor Matos presentó la *Oposición a Moción de Desestimación*[13], en la que aclaró que su alegación no era que la señora Correa era usufructuaria, sino que es dueña, debido a que esta vivió en la parcela de forma continua, pacífica e ininterrumpidamente. A tales fines, incluyó una copia de la escritura número 121[14] sobre compraventa otorgada ante el notario Ricardo R. Rivera Correa, el 25 de septiembre de 1956, de la que se desprende que la señora Correa adquirió el solar 273 de la señora Cándida Cirino. Además, indicó que no procedía agotar los remedios administrativos, ya que este se limitaba a solicitar que se declarara dueño y propietario de la parcela 273. Por último, alegó que Vivienda actuó en contra de sus propios actos, al no obedecer su Reglamento sobre la transacción de las mejoras.

---

[12] Apéndice del recurso de *Apelación*, págs. 118-120.
[13] Apéndice del recurso de *Apelación*, págs. 121-131.
[14] Apéndice del recurso de *Apelación*, págs. 127-131.

Luego de analizar los argumentos de las partes, el 13 de marzo de 2025, el TPI emitió una *Sentencia* en la que desestimó el caso a favor de Vivienda y el matrimonio Boria-Paz al amparo de la Regla 10.2 (5), *supra.* El foro apelado concluyó que la escritura de compraventa presentada en la *Oposición a Moción de Desestimación* evidenció que la señora Correa compró la mejora y no la parcela 273. Por tal razón, al ser un derecho personalísimo, el usufructo perteneciente a la señora Correa se extinguió con su muerte. Detalló que el señor Matos no tenía legitimación activa, toda vez que carecía de un justo título e interés legítimo sobre la parcela. Dispuso, además, que el señor Matos debía agotar los remedios administrativos previo a acudir ante ese foro.

Inconforme, el 28 de marzo de 2025, el señor Matos presentó una *Moción de Reconsideración*[15], en la cual arguyó que no presentó una reclamación hipotética, ni frívola, ni deficiente en su esencia. Asimismo, estableció que, la controversia en torno a la adquisición onerosa de mejoras, la omisión estatal en formalizar esa transacción, la adjudicación del predio a terceros sin notificación ni proceso, y la consecuente imposibilidad de residir en la propiedad, eran causas de acción válidas en derecho. De igual forma, alegó que la desestimación del caso fue prematura, debido a que el TPI dictó la sentencia sin permitir la presentación de prueba que evidenciara su derecho a la parcela 273.

En respuesta, el 14 de abril de 2025, el matrimonio Boria-Paz presentó su *Réplica y Oposición a Moción de Reconsideración*[16] en la que reiteraron que el derecho de la señora Correa era en calidad de usufructuaria. Señalaron que los documentos presentados establecen que la parcela 273 pertenece a Vivienda, por lo que el

---

[15] Apéndice del recurso de *Apelación*, págs. 15-34.
[16] Entrada Núm. 43 del Sistema Unificado de Manejo y Administración de Casos (SUMAC).

recurso se presentó ante el TPI de manera prematura. También indicaron, que el señor Correa no presentó evidencia alguna que sustentara que tiene derecho a remedio alguno.

Igualmente, el 16 de abril de 2025, el Gobierno de Puerto Rico por sí y en representación de Vivienda, presentó una *Moción en Oposición a Moción de Reconsideración*[17], en la que señalaron que Vivienda era el dueño de la parcela 273 y que la señora Correa poseyó en calidad de usufructuaria, por lo que no cumplía con los requisitos para constituir la usucapión.

Cabe destacar que, todas las partes tuvieron la oportunidad de argumentar su postura en la vista el 4 de marzo de 2025. Por su parte, Vivienda alegó que el señor Matos nunca intentó demostrar algún hecho que evidenciara un cambio en el concepto de posesión de la señora Correa. Por ende, carecía de legitimación activa para presentar este pleito.

Luego de otorgar un término para que las partes presentaran su posición en cuanto a la solicitud de *Reconsideración*, el 21 de abril de 2025, el TPI emitió una *Orden sobre Reconsideración*[18] en la que declaró *No Ha Lugar* la *Moción de Reconsideración.*

Inconforme, el señor Matos compareció a este foro mediante recurso de *Apelación* en el que, esbozó los siguientes señalamientos de error:

> **PRIMER ERROR**: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA Y ABUSÓ DE SU DISCRECIÓN AL DICTAR SENTENCIA DESESTIMATORIA SIN APLICAR EL ESTÁNDAR RIGUROSO DE LA REGLA 10.2(5) DE PROCEDIMIENTO CIVIL, A PESAR DE QUE LA DEMANDA CONTENÍA ALEGACIONES SUFICIENTES, CLARAS Y BIEN ARTICULADAS QUE REQUERÍAN SER EVALUADAS EN SUS MÉRITOS.
>
> **SEGUNDO ERROR**: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA Y ABUSÓ DE SU DISCRECIÓN AL RESOLVER CUESTIONES DE HECHO SUSTANTIVAS -COMO LA LEGITIMACIÓN ACTIVA, LA PRESCRIPCIÓN ADQUISITIVA Y LA VALIDEZ DEL ACTO ADMINISTRATIVO DE SEGREGACIÓN- SIN VISTA NI DESARROLLO PROBATORIO,

---

[17] Entrada Núm. 44 de SUMAC.
[18] Apéndice del recurso de *Apelación,* pág. 35.

EN CONTRAVENCIÓN A LOS PRINCIPIOS BÁSICOS DE JUSTICIA PROCESAL.

**TERCER ERROR**: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA Y ABUSÓ DE SU DISCRECIÓN AL APLICAR DE FORMA MECÁNICA LA DOCTRINA DE AGOTAMIENTO DE REMEDIOS ADMINISTRATIVOS, IGNORANDO LAS EXCEPCIONES DISPUESTAS EN LA LEY DE PROCEDIMIENTO ADMINISTRATIVO UNIFORME Y EN LA JURISPRUDENCIA APLICABLE CUANDO SE ALEGAN VIOLACIONES CONSTITUCIONALES Y DERECHOS ADQUIRIDOS POR USUCAPIÓN.

El 23 de mayo de 2025, concedimos un término vencedero el 20 de junio de 2025, para que los apelados presentaran su *Alegato*. De lo contrario, se procedería a resolver sin el beneficio de su comparecencia. Así las cosas, el 20 de junio de 2025, Vivienda compareció representada por la Oficina del Procurador General de Puerto Rico mediante una *Solicitud de Término* adicional para someter su postura.

Concedido el plazo, Vivienda presentó su *Alegato* el 27 de junio de 2025, en el cual reiteró que quien posee con autorización del dueño, no puede adquirir el domino por virtud de prescripción ordinaria o extraordinaria, por lo que no se configura la figura de usucapión. Incluso, el apelante reconoce a Vivienda como el dueño de la parcela. Recalcó que el derecho al usufructo culmina con la muerte del usufructuario, conforme a ello, el señor Matos no se subrogó en los derechos de la señora Correa. Por otro lado, argumentó que al completar el pago por concepto de mejoras no se le confirió de manera automática la titularidad del usufructo. Al contrario, este acto presupone el inicio de un procedimiento administrativo ante la agencia, el cual debe culminar, ya que Vivienda tiene la autoridad exclusiva para adjudicar los títulos de las parcelas que le pertenecen.

Con el beneficio de la comparecencia de las partes, procedemos a exponer el derecho aplicable.

## II.

### -A-

La moción de desestimación al amparo de la Regla 10.2 de Procedimiento Civil[19] "es aquella que formula el demandado antes de presentar su contestación a la demanda, en la cual solicita que se desestime la demanda presentada en su contra"[20]. La citada regla dispone que la parte demandada puede presentar una moción de desestimación en la que alegue las defensas siguientes:

(1) falta de jurisdicción sobre la materia;
(2) falta de jurisdicción sobre la persona;
(3) insuficiencia del emplazamiento;
(4) insuficiencia del diligenciamiento del emplazamiento;
(5) dejar de exponer una reclamación que justifique la concesión de un remedio;
(6) dejar de acumular una parte indispensable[21].

Al resolver una moción de desestimación bajo la Regla 10.2 (5), *supra,* los tribunales deberán tomar "como ciertos todos los hechos bien alegados en la demanda y que hayan sido aseverados de manera clara y concluyente, y que de su faz no den margen a dudas"[22]. La norma que impera es que "tales alegaciones hay que interpretarlas conjuntamente, liberalmente, y de la manera más favorable posible para la parte demandante"[23].

Por lo tanto, "al examinar la demanda para resolver este tipo de moción se debe ser sumamente liberal y 'únicamente procedería [desestimar] cuando de los hechos alegados no podía concederse remedio alguno a favor del demandante'"[24]. Además, "[t]ampoco procede la desestimación, si la demanda es susceptible de ser enmendada"[25]. Nuestro máximo foro judicial ha expresado que al examinar una moción de este tipo "**debemos considerar, 'si a la luz de la situación más favorable al demandante, y resolviendo toda**

---

[19] 32 LPRA Ap. V, R. 10.2.
[20] *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 428 (2008).
[21] 32 LPRA Ap. V, R. 10.2(5).
[22] *Aut. Tierras v. Moreno & Ruiz Dev. Corp., supra*, pág. 428.
[23] *Íd.,* págs. 428-429.
[24] *Colón Rivera v. ELA*, 189 DPR 1033, 1049 (2013), que cita a R. Hernández Colón, *Derecho Procesal Civil*, 4ta ed., San Juan, Ed. Lexis-Nexis, 2007, pág. 231.
[25] *Aut. Tierras v. Moreno & Ruiz Dev. Corp., supra,* pág. 429.

**duda a favor de [e]ste, la demanda es suficiente para constituir una reclamación válida"**[26]. (Énfasis nuestro).

En síntesis, el Tribunal debe aceptar como ciertos todos los hechos que hayan sido bien alegados en la demanda y excluir de sus análisis conclusiones legales. Luego, debe determinar si, a base de esos hechos que aceptó como ciertos, la demanda establece una reclamación plausible que justifique la concesión de un remedio. Si de este análisis el tribunal entiende que no se cumple con el estándar de plausibilidad entonces debe desestimar la demanda, pues no debe permitir que proceda una demanda insuficiente bajo el pretexto de que se podrán probar las alegaciones conclusorias con el descubrimiento de prueba[27].

Por otro lado, la Regla 10.2 de Procedimiento Civil, *supra*, dispone, en lo pertinente, lo siguiente:

> Si en una moción en que se formula la defensa número (5) se exponen materias no contenidas en la alegación impugnada, y éstas no son excluidas por el tribunal, la moción deberá ser considerada como una solicitud de sentencia sumaria y estará sujeta a todos los trámites ulteriores provistos en la Regla 36 de este apéndice hasta su resolución final, y todas las partes deberán tener una oportunidad razonable de presentar toda materia pertinente a tal moción bajo dicha regla.

Cónsono con lo anterior, una moción de desestimación que expone materias nuevas debe cumplir con la Regla 36 de Procedimiento Civil[28]. El Tribunal Supremo de Puerto Rico ha expresado que materias no contenidas en la alegación impugnada puede consistir en: defensa de caducidad o prescripción, copia de contratos, deposiciones, admisiones, certificaciones y contestaciones a interrogatorios[29].

---

[26] *Íd.* que cita a *Pressure Vessels P.R. v. Empire Gas P.R.*,137 DPR 497 (1994); *Unisys v. Ramallo Brothers*, 128 DPR 842 (1991).

[27] R. Hernández Colón, *Derecho Procesal Civil*, 5ta ed., San Juan, LexisNexis, 2010, pág. 268.

[28] 32 LPRA Ap. V, R. 36.

[29] *Luan Invest. Corp. v. Rexach Const. Co.*, 152 DPR 652, 664-665 (2000); *Torres Capeles v. Rivera Alejandro*, 143 DPR 300, 309 (1997).

**-B-**

En nuestro ordenamiento jurídico el principio de justiciabilidad requiere la existencia de un caso o controversia real para que los tribunales puedan ejercer válidamente el Poder Judicial[30]. De este modo, las siguientes controversias no se consideran justiciables: (1) aquellas que procuran resolver una cuestión política; (2) cuando una parte litigante carece de legitimación activa; (3) cuando hechos ocurridos con posterioridad a la presentación de un pleito convierten la controversia en académica; (4) aquellos pleitos donde las partes envueltas buscan obtener una opinión consultiva; y (5) cuando la causa de acción no está madura[31].

En lo pertinente, la legitimación activa se define como "la capacidad que se le requiere a la parte promovente de una acción para comparecer como litigante ante el tribunal, realizar con eficiencia actos procesales y, de esta forma, obtener una sentencia vinculante"[32]. Al amparo de esta doctrina, la parte que solicita un remedio judicial debe demostrar que: (1) ha sufrido un daño claro y palpable; (2) el daño es real, inmediato y preciso, no abstracto o hipotético; (3) existe una conexión entre el daño sufrido y la causa de acción ejercitada, y (4) la causa de acción surge al palio de la Constitución o de una ley[33].

**-C-**

La sentencia declaratoria es un "mecanismo remedial y profiláctico que permite anticipar la dilucidación de los méritos de

---

[30] *Hernández, Santa v. Srio. de Hacienda*, 208 DPR 727, 738 (2022), citando a *Ramos, Méndez v. García García*, 203 DPR 379, 393-394 (2019).
[31] *Bhatia Gautier v. Gobernador*, 199 DPR 59, 69 (2017).
[32] *Ramos, Méndez v. García García*, *supra*, pág. 394.
[33] *Hernández, Santa v. Srio. de Hacienda*, *supra*, pág. 739, citando a *Bhatia Gautier v. Gobernador, supra*, pág. 69; *Fund. Surfrider y otros v. A.R.Pe.,* 178 DPR 563, 572 (2010); *Sánchez et al. v. Srio. de Justicia et al.,* 157 DPR 360, 371 (2002).

cualquier reclamación ante los tribunales, siempre y cuando exista un peligro potencial contra quien la solicita"[34].

Pese a que la sentencia declaratoria puede ser presentada, aunque se haya instado o pueda instarse otro remedio, "[c]omo [regla] general, [este recurso] **no est[á] disponible** para **revisar decisiones administrativas** [...], ya que se trata de un procedimiento ordinario"[35].

Por tanto, se ha establecido que la sentencia declaratoria no puede ser utilizada cuando el legislador desarrolló un procedimiento administrativo específico para atender el asunto en controversia. Cónsono con ello, el profesor Demetrio Fernández Quiñones ha expresado que:

> La sentencia declaratoria es improcedente en todo caso en que exista un procedimiento administrativo específico. Dos razones existen para solicitar la desestimación del recurso de sentencia declaratoria en el contexto del procedimiento administrativo. Primero, la falta de jurisdicción porque el legislador ha especificado un procedimiento de forma terminante y exclusivo. Segundo, la posibilidad de que no se hayan agotado los remedios administrativos[36].

**-D-**

El Departamento de la Vivienda fue creado por la Ley Orgánica del Departamento de la Vivienda, Ley Núm. 97 de 10 de junio de 1972[37]. La referida agencia gubernamental es responsable de elaborar y ejecutar la política pública de la vivienda y el desarrollo comunal de nuestro país[38].

Por su parte, la Ley Núm. 132 ordena a la Autoridad de Tierras, a la Administración de Terrenos, al Departamento de Transportación y Obras Públicas (DTOP), a la Compañía de Fomento Industrial, a la Administración de Servicios Generales y a cualquier

---

[34] *Beltrán Cintrón v. Estado Libre Asociado*, 204 DPR 89, 109 (2020), citando a *Senado de PR v. ELA*, 203 DPR 62, 71 (2019), que a su vez cita a *Alcalde Guayama v. ELA*, 192 DPR 329, 333 (2015).

[35] *Íd.*, citando a J. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, 2da ed., Publicaciones JTS, 2011, T. V, pág. 1793. (énfasis nuestro).

[36] *Beltrán Cintrón v. Estado Libre Asociado*, 204 DPR, a las págs. 109-110, citando a Fernández Quiñones, *op. cit.*, págs. 747–748.

[37] 3 LPRA secs. 441 *et. seq.*

[38] 3 LPRA sec. 441b.

otra instrumentalidad pública a transferir a Vivienda el título de propiedad de los predios de terrenos públicos en los cuales se halle enclavada una vivienda, libre de costo[39].

Por igual, la precitada ley autoriza al Secretario de la Vivienda a conceder el título de propiedad sobre los terrenos que le sean transferidos, que le pertenezcan o que se adquieran en un futuro a los ocupantes que tengan constituidos en dichos terrenos su vivienda[40]. Si resultaren solares vacantes después de cubiertas las familias o personas comprendidas en las propiedades uno y dos, el Secretario podrá adjudicar en usufructo los restantes solares en favor de las familias de escasos recursos económicos que carezcan de un lugar adecuado donde construir sus viviendas[41]. En estos casos la selección y adjudicación para las familias se hará conforme al Reglamento para la Distribución y Administración de Parcelas o Solares para Vivienda bajo el Título V de la Ley de Tierras de Puerto Rico[42].

Paralelamente, la Ley Núm. 26, *supra*, persigue "promover el bienestar, la libertad económica y la justicia social de los agregados"[43]. De acuerdo a su Exposición de Motivos, el objetivo de dicho título es que "todo agregado tenga el derecho, por lo menos, a un cuadro de tierra donde levantar permanentemente su hogar"[44]. La disposición legal establece la cesión gratuita de terreno en usufructo y las restricciones relacionadas a esa cesión[45]. Dicho terreno en usufructo será otorgado mediante un contrato de usufructo que preparará Vivienda[46]. La precitada ley, en lo pertinente, decreta que:

---

[39] 17 LPRA sec. 752.
[40] *Íd.,* sec. 754.
[41] *Íd.,* sec. 757a.
[42] *Íd.*
[43] 28 LPRA sec. 551.
[44] *Íd.*
[45] *Íd.,* sec. 553.
[46] *Íd.*

> **El usufructuario no podrá**, bajo pena de nulidad absoluta, vender, **transferir**, permutar, alquilar, **ceder**, asignar, arrendar ni en modo alguno enajenar o gravar en todo o en parte, **el derecho de usufructo que se le conceda, ni la parcela de terreno sobre la cual se le conceda dicho derecho**, ni las edificaciones, accesiones o mejoras existentes, o que en el futuro levante o introduzca en la misma, ni ningún derecho, título o privilegio derivado del contrato de usufructo; Disponiéndose, que **cualquier violación de esta disposición no conferirá derechos legales de clase alguna a ningún supuesto adquiriente, cesionario o acreedor, sino que, por el contrario, producirá, sin que medie declaración judicial al efecto, la confiscación** a favor de la Administración de Desarrollo y Mejoras de Viviendas del derecho de usufructo concedido al usufructuario sobre la parcela, así como de todo interés, derecho y acción que sobre la parcela cedida en usufructo, o sobre las mejoras, edificaciones, accesiones o siembras existentes en la misma tuviera o pudiera tener el supuesto cedente y/o cesionario, acreedor y/o deudor, vendedor o adquirente, quedando la Administración de Desarrollo y Mejoras de Viviendas en libertad de disponer en dicha parcela, construcción, edificación, siembra o mejoras, sin tener que indemnizar o pagar cantidad de dinero a persona alguna por ningún concepto; Disponiéndose, sin embargo, que la Administración de Desarrollo y Mejoras de Viviendas en el ejercicio de su discreción, podrá autorizar expresamente y por escrito a un usufructuario a transferir, ceder, permutar o asignar su derecho de usufructo a otra persona que cualifique como tal usufructuario; Disponiéndose, además, que cualquier derecho de usufructo sobre una parcela, así como cualquier casa, mejora, plantación, siembra o edificación enclavada en la misma, que como consecuencia de una violación a las disposiciones de esta sección revista o pase a ser propiedad de la Administración de Desarrollo y Mejoras de Viviendas como antes se ha dicho, será sorteado entre el número de agregados que la Administración de Desarrollo y Mejoras de Viviendas estime pertinente. Las disposiciones de esta sección serán también aplicables a los sucesores en título de los usufructuarios originales. En aquellos casos en que el usufructuario de la parcela haya dejado de ocuparla total o parcialmente, y que otra persona no autorizada por la Administración de Desarrollo y Mejoras de Viviendas esté ocupando total o parcialmente dicha parcela, se presumirá que ha habido una cesión ilegal por parte del usufructuario de sus derechos sobre dicha parcela, con las correspondientes consecuencias a que se hace referencia en esta ley[47].

Cónsono con lo anterior, el Reglamento 7534, Artículo 9, establece que las personas a las que se le adjudique un solar en usufructo no podrán, bajo pena de nulidad absoluta, vender, transferir, permutar, alquilar, ceder, asignar, arrendar o gravar el derecho de usufructo[48]. Por otra parte, el Artículo 7(5) explícitamente dispone que:

---

[47] *Íd.* (énfasis nuestro).
[48] Obtenible en: https://www.vivienda.pr.gov/wp-content/uploads/2015/09/7534-Reglamento-para-la-Distribuci%C2%A2n-y-

Si se determina que no cualifica para acogerse a los beneficios del programa, se le notificará por escrito a la dirección indicada en la solicitud con no menos de treinta (30) días de anticipación a la fecha en que se efectuará el sorteo de selección de candidatos. En dicha comunicación se le indicará que de no estar de acuerdo con la determinación que sobre su elegibilidad se haya hecho, tendrá treinta (30) días a partir del recibo de la misma para apelar ante el Secretario y solicitar una vista administrativa[49].

**-E-**

La doctrina de agotamiento de remedios administrativos es una norma de auto-limitación judicial que "determina la etapa en que un tribunal de justicia debe intervenir en una controversia que se ha presentado inicialmente ante un foro administrativo"[50]. El propósito de la doctrina es determinar la etapa en la que el litigante puede acudir al tribunal, de manera que se evite una intervención judicial innecesaria y a destiempo, que interfiera con el cauce y desenlace final del proceso administrativo[51]. Así pues, mediante la mencionada doctrina, los tribunales discrecionalmente se abstienen de revisar una actuación de una agencia hasta tanto la persona afectada agote todos los remedios administrativos, de manera que la decisión administrativa refleje la decisión final de la agencia[52].

La posposición de la intervención judicial permite que la agencia desarrolle un historial completo del asunto ante su consideración, fomenta a que ese organismo utilice su conocimiento especializado para adoptar las medidas correspondientes conforme a la política pública y aplica uniformemente sus poderes para poner en vigor las leyes, rectificar oportunamente sus errores o reconsiderar el alcance de sus pronunciamientos[53]. A su vez, facilita

---

Administraci%C2%A2n-de-Parcelas-o-Solares-para-Vivienda-Bajo-el-T%C2%B0tulo-V-de-la-Ley-de-Tierras-de-Puerto-Rico..pdf.
[49] *Íd.*
[50] *S.L.G. Flores-Jiménez v. Colberg*, 173 DPR 843, 851 (2008).
[51] *AAA v. UIA*, 199 DPR 638, 656 (2018); *Procuradora Paciente v. MCS*, 163 DPR 21, 35 (2004).
[52] *Asoc. Pesc. Pta. Figueras v. Pto. del Rey*, 155 DPR 906, 916 (2001).
[53] *Procuradora Paciente v. MCS*, 163 DPR 21, 35 (2004), citando a *Rivera v. E.L.A.*, 121 DPR 582, 595 (1988).

la revisión judicial para que los tribunales tengan información más precisa sobre los fundamentos de la actuación gubernamental[54].

Como regla general, el agotamiento de remedios se invoca cuando una parte ante el foro administrativo solicita la intervención judicial antes de consumar el procedimiento administrativo[55]. Esto es, cuando la parte que instó o tiene instada una acción ante una agencia u organismo administrativo, acude ante el Tribunal sin antes haber completado el trámite administrativo disponible[56]. De manera que, "el agotamiento de remedios presupone la existencia de un procedimiento administrativo que comenzó pero que no finalizó", debido a que la parte concernida recurrió al foro judicial previo a que el procedimiento ante la agencia culminara[57].

En consonancia a lo anteriormente expuesto, la sección 1.2 de la Ley de Procedimiento Administrativo Uniforme, Ley Núm. 38-2017 (LPAU)[58], dispone que el procedimiento administrativo supone, entre otros, la adjudicación formal de toda controversia o planteamiento ante la consideración de una agencia. Al mismo tiempo, define la adjudicación como el pronunciamiento mediante el cual una agencia determina los derechos, obligaciones o privilegios que correspondan a una parte[59]. El Tribunal Supremo ha expresado que "cuando aplica [la referida doctrina], requiere que los tribunales se abstengan de intervenir hasta tanto la agencia atienda el asunto"[60].

Por otro lado, la LPAU dispone que un tribunal podrá eximir a una parte de agotar los remedios provistos por la agencia en los siguientes supuestos: (1) cuando el remedio administrativo es

---

[54] *Rivera v. E.L.A.*, 121 DPR 582, 595 (1988).
[55] *S.L.G. Flores, Jiménez v. Colberg*, 173 DPR 843, 851 (2008).
[56] *Ortiz v. Panel F.E.I.*, 155 DPR 219, 242 (2001).
[57] *Asoc. de Pesc. Pta. Figueras v. Pto. del Rey*, 155 DPR 906, 918 (2001), citando a *Mun. de Caguas v. AT&T*, 154 DPR 401, 408-409 (2001).
[58] 3 LPRA sec. 9603(l).
[59] 3 LPRA sec. 9603(b).
[60] *S.L.G. Flores-Jiménez v. Colberg*, 173 DPR 843, 851 (2008).

inadecuado; (2) si requerir el agotamiento resulta en un daño irreparable al promovente y en el balance de intereses no se justifica agotar dichos remedios; (3) resulta inútil agotar los remedios administrativos por la dilación excesiva de los procedimientos; (4) cuando hay un caso claro de falta de jurisdicción de la agencia; (5) cuando se trata de un asunto estrictamente de derecho y es innecesaria la pericia administrativa[61].

### III.

En el caso de epígrafe, nos corresponde evaluar si incidió el foro apelado al dictar sentencia a favor del matrimonio Boria-Paz y Vivienda, puesto que, la parte apelante, en su primer señalamiento de error, aduce que el TPI no aplica adecuadamente el estándar de la Regla 10.2(5) de Procedimiento Civil[62], a pesar de que la demanda contenía las alegaciones suficientes para establecer una reclamación plausible; como segundo error, alega que se debe conceder una vista antes de adjudicar la legitimación activa, prescripción adquisitiva y la validez del cauce administrativo; y por último, en su tercer señalamiento de error, arguye que incide al aplicar la doctrina de agotamiento de remedios administrativos sin aplicar las excepciones establecidas en la Ley. Por estar íntimamente relacionados los tres errores, se discutirán en conjunto. No obstante, adelantamos que ninguno de los errores esbozados fue cometido. Veamos.

Tras examinar la *Demanda*, esta contiene veintinueve (29) alegaciones. Sin embargo, las alegaciones número cinco, seis y siete, son trascendentales para determinar si la *Demanda* constituye una reclamación válida, a saber:

> 5. El demandante adquirió unas mejoras que radican en la parcela 273 de las parcelas Suárez en Loíza por el precio de $28,600.00. Dicha parcela pertenece al Departamento de la Vivienda conforme a la Ley 132 de 1975. Véase recibos de

---

[61] 3 LPRA sec. 9673.
[62] 32 LPRA Ap. V, R. 10.2.

pagos expedidos por el Departamento de Hacienda. Anejo, páginas 12-21.

6. El precio fue fijado por el propio Departamento de Vivienda mediante tasador contratado por dicha agencia. Véase Anejo, páginas 1-11.

7. Dichas mejoras fueron adquiridas por Felicita Correa Carrasquillo, abuela del demandante para el año 1952. Desde entonces, y hasta su fallecimiento, Felicita Correa ha vivido la propiedad que ocupa la parcela 273 de manera continua, pacífica e ininterrumpida. Por lo que adquirió la misma por prescripción y subroga el demandante a Doña Felicita al adquirir la propiedad.

Entendemos que dichas alegaciones son concluyentes para determinar que el apelante no tiene derecho a remedio alguno bajo cualquier estado de derecho que pudiera aprobar en apoyo a su reclamación, aun interpretando la demanda lo más liberalmente a su favor[63].

Nótese que, Vivienda incluyó dos certificaciones junto a la *Moción en Solicitud de Desestimación*[64], estas reflejan que la señora Correa era usufructuaria del solar núm. 273 al amparo de la Ley Núm. 26, *supra.* Además, dispone que la parcela consta a favor de Vivienda debido a que la usufructuaria falleció en 2003. Según el documento, varios herederos de la señora Correa acudieron a la oficina regional de Carolina donde se les orientó acerca de la declaratoria de herederos y la cesión de derechos a favor de algún heredero que fuera elegible para adjudicar el solar.

Específicamente, surge que en 2009 los herederos acudieron a la oficina regional donde fueron orientados sobre los documentos a presentar, a saber: la declaratoria de herederos y la cesión de derechos. Por último, se les indicó que hasta tanto los documentos no estuvieran ante la consideración de la agencia, no se procesaría ninguna solicitud bajo las disposiciones de ley aplicable. Posteriormente, en 2019, se presentaron dos (2) herederas de la señora Correa, quienes informaron el interés del señor Matos para

---

[63] *Rivera Sanfeliz et al. v. Jta. Dir. FirstBank*, 193 DPR 38, 49 (2015); *Colón Rivera et al. v. ELA,* 189 DPR 1033, 1049 (2013).
[64] Apéndice del recurso de *Apelación,* págs. 93-117.

comprar la estructura ubicada en la parcela 273. En esta visita, se les indicó que Vivienda declararía el solar vacante por la muerte de la usufructuaria y procedería a tasar la propiedad. Consecuentemente, Vivienda subdividió y creó la parcela 273-A, la cual adjudicó al matrimonio Boria-Paz.

En cuanto al señor Matos, resulta que este pagó por las mejoras de la parcela 273. Sin embargo, se le orientó que, para ser elegible y radicar la solicitud de adjudicación, este debía residir en Puerto Rico. Así las cosas, el señor Matos nunca completó el trámite correspondiente para que se adjudicara la parcela 273 en usufructo.

La Ley Núm. 26, *supra*, establece que ningún usufructuario podrá transferir o ceder el derecho de usufructo concedido. Igualmente, dispone que cualquier violación de esta disposición no conferirá derechos legales de clase alguna a ningún supuesto adquiriente, cesionario o acreedor, sino que, por el contrario, producirá, sin que medie declaración judicial a tal efecto, la confiscación a favor de Vivienda del derecho de usufructo sobre la referida parcela[65]. Según el Reglamento 7534 de Vivienda, si se determina que la persona no cualifica para acogerse a los beneficios del programa, tendrá treinta (30) días contados desde la notificación de inelegibilidad para apelar la decisión ante el Secretario y solicitar una vista administrativa.

Ahora bien, la doctrina de remedios administrativos constituye una norma de autolimitación judicial que permite determinar en cual etapa debe intervenir el tribunal en una controversia de un ente administrativo. Ello, para que la agencia pueda desarrollar un historial completo ante su consideración y que permita reflejar la decisión final de esta. Su invocación presupone la existencia de un procedimiento administrativo que no ha

---

[65] 28 LPRA sec. 553.

finalizado porque la parte afectada acudió prematuramente al tribunal.

En su recurso, el apelante expone que erró el TPI al desestimar la demanda y concluir que debió agotar los recursos administrativos previo a comparecer ante el foro apelado. En sus escritos, el señor Matos alegó que tiene legitimación activa para presentar su reclamación, ya que adquirió la parcela 273 mediante prescripción adquisitiva.

Según discutido anteriormente, la sentencia declaratoria es un mecanismo que permite el anticipo de dilucidar los méritos de una reclamación si existe un peligro potencial contra quien la solicita. Como regla general, este procedimiento no está disponible cuando el legislador desarrolló un procedimiento administrativo específico para atender el asunto en controversia.

Sin embargo, la LPAU contiene una serie de excepciones que eximen a la parte concernida de agotar los remedios administrativos: (1) cuando el remedio administrativo es inadecuado; (2) si requerir el agotamiento resulta en un daño irreparable al promovente y en el balance de intereses no se justifica agotar dichos remedios; (3) resulta inútil agotar los remedios administrativos por la dilación excesiva de los procedimientos; (4) cuando hay un caso claro de falta de jurisdicción de la agencia; (5) cuando se trata de un asunto estrictamente de derecho y es innecesaria la pericia administrativa[66].

Luego de un análisis del expediente, entendemos que el señor Matos debió agotar los remedios administrativos previo a su comparecencia al foro judicial. De la *Certificación*[67] presentada por Vivienda consta que el señor Matos inició el procedimiento de adjudicación de la parcela 273. Según los escritos del señor Matos

---

[66] 3 LPRA sec. 9673.
[67] Apéndice del recurso de *Apelación,* págs. 93-117.

Vivienda actuó con temeridad debido a que le notificó su inelegibilidad posterior a la presentación del caso de autos. No obstante, es por los propios actos de los herederos que el trámite de adjudicación no se completó. Toda vez que se les indicó en dos (2) ocasiones acerca de los documentos que debían ser presentados ante la agencia para que se pudiera adjudicar la parcela 273. Más aún, se les advirtió que la cesión de sus derechos debía recaer en alguien que fuera elegible para la adjudicación del usufructo conforme a la reglamentación de Vivienda. Ante la falta de estos documentos, Vivienda declaró la parcela vacante para continuar con sus trámites. Consecuentemente, según la facultad conferida, segregó la parcela núm. 273, creó la parcela núm. 273-A y se otorgó en usufructo al matrimonio Boria-Paz.

Colegimos que resulta improcedente utilizar el procedimiento de sentencia declaratoria para pasar juicio sobre el trámite administrativo, como la parte apelante pretende. Nos hacemos eco de las expresiones vertidas por el foro sentenciador, si la parte apelante está en desacuerdo con algún trámite o determinación administrativa de la agencia concernida, deberá recurrir de la misma mediante el recurso correspondiente. Toda vez que la parte apelante recurre ante nos de una sentencia declaratoria, nuestra determinación sólo dispone del decreto declaratorio y no de alguna otra causa que pudiera tener la parte apelante a nivel administrativo.

**IV.**

Por los fundamentos antes expuestos, los que hacemos formar parte de este dictamen, ***confirmamos*** la *Sentencia* apelada.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones